[Argued Nov. 2, 1892; decided Jan. 16, 1893.]

## J. L. BERNARD v. JOSEPH TAYLOR.

[S. C. 31 Pac. Rep. 968; 18 L. R. A. 859.]

1. WAGERS—PUBLIC POLICY.—Wagers are inconsistent with the established interests of society, are in conflict with the morals of the age, and are void on grounds of public policy.*

2. ILLEGAL CONTRACTS—RESCISSION.—While an illegal contract is still executory, either party may rescind the contract and recover any property he may have put up; but if the contract has been executed, nothing paid or delivered can be recovered.

3. WAGERS — RECOVERY OF STAKE.— Property wagered on a foot race may be recovered by its owner if demanded before the race has been run.

Multnomah County: ERASMUS D. SHATTUCK, Judge.

---

* NOTE.— The subject of the legality of wagers is treated in an exhaustive note to this case in 18 L. R. A. 859.— REPORTER.

Action by J. L. Bernard against Joseph Taylor to recover money bet on a foot race, and deposited with defendant. From a judgment for plaintiff defendant appeals. Affirmed.

*Alfred F. Sears, Jr. ( McGinn & Simon* on the brief), for Appellant.

A wagering contract upon an indifferent subject is valid by the common law, and in this country, except where prohibited by statute. It is valid by the laws of Oregon, except in respect to those matters which come within the inhibition of the statute relating to gambling. This statute does not prohibit bets upon foot races: Hill's Code, § 3526 *et seq.*

The enumeration of the unlawful games excludes all other games from the illegal category. That the rule is as stated at common law, see *Good* v. *Elliot,* 3 T. R. 693; *Allen* v. *Hean,* 1 T. R. 56–60; *Atherfold* v. *Beard,* 2 T. R. 610; *Da Costa* v. *Jones,* 2 Cowp. 729; *Ramloll Thackoorseydas* v. *Soojumnull Dhondmull,* 6 Moore, P. C. C. 300–310, 12 Jur. 315; *Harding* v. *Walker,* 1 Hempst. 53; *Sackett* v. *Davis,* 3 McLean, 101; *Pope* v. *St. Leger,* 1 Salk. 344; *March* v. *Pigot,* 5 Burr. 2802; *Jones* v. *Randall,* 1 Cowp. 17, 37; *Brandon* v. *Hibbert,* 4 Campb. 37; *Moon* v. *Durden,* 2 Exch. 23; *Campbell* v. *Richardson,* 10 Johns. 406; *Bunn* v. *Riker,* 4 Johns. 427; *Walker* v. *Armstrong,* 54 Tex. 609; *Harris* v. *White,* 81 N. Y. 544; *Johnson* v. *Fall,* 6 Cal. 359 (65 Am. Dec. 518); *Bass* v. *Peevey,* 22 Tex. 295; *Dewees* v. *Miller,* 5 Harr. (Del.), 347; *Trenton Mut. L. & F. Ins. Co.* v. *Johnson,* 24 N. J. L. 576; *Smith* v. *Smith,* 21 Ill. 244 (74 Am. Dec. 100); *Beadles* v. *Bless,* 27 Ill. 320 (81 Am. Dec. 231); *Hasket* v. *Wootan,* 1 Nott & McC. 180; *Stoddard* v. *Martin,* 1 R. I. 1; *Phillips* v. *Ives,* 1 Rawle, 42.

Then the stakeholder had the right to retain the funds until the happening of the event. If the wager is legal, neither party has the right to rescind the contract and claim the money: 2 Parsons, Cont. 626; *Brandon* v. *Hibbert,* 4 Campb. 37; *Bland* v. *Collett,* 4 Campb. 157. If,

according to the wager, the parties have appointed judges on the event, it can be ascertained only by the decision of the judges; *Dewees* v. *Miller*, 5 Harr. (Del.), 347 ; *Kirkland* v. *Randon*, 8 Tex. 10.

The findings show that the agreement of the parties was not an ordinary wager, but that it had in contemplation a "job race"; that is, it was a corrupt, criminal, and criminally illegal agreement.   It was in advance "fixed" that one of the parties should win and that certain persons should lose their money.   This put the plaintiff *in pari delicto* with the defendant, and the rule is in such cases, *potior est conditio possidentis:  Davis* v. *Holbrook*, 1 La. Ann. 176; *Sutphin* v. *Crozer*, 32 N. J. L. 462 ; *Murdock* v. *Kilbourn*, 6 Wis. 468 ; *Winchester* v. *Nutter*, 52 N. H. 507 (13 Am. Rep. 93).

*John Macmillan (Miller & Miller* on the brief), for Respondent.

Suppose that the plaintiff was as deep in the mud as the others were in the mire,— let us also suppose that he was *in pari delicto*,— the position would then be one of contemplated wrong, a meditated fraud, conceived, initiated, and intended to be carried out; the plans laid and money placed by plaintiff in defendant's hands for the purpose of executing them.   Suppose all this, what is the plaintiff's position?   The law always encourages repentence; its answer invariable is:   "Before the deed is consummated you may withdraw; while the wrong is contemplated only you are innocent and you may repent."   On the other hand, if the wrong be executed, not executory, completed, not contemplated, accomplished, not merely planned, the law has but one answer for the wrongdoer: "You have given the poison, and you must abide the result."   See the following authorities: *Aubert* v. *Walsh*, 3 Taunton, 277; *Tennant* v. *Elliott*, 1 Bos. & Pul. 3; *Tyler* v. *Carlisle*, 89 Me. 210 (1 Am. St. Rep. 301); *Greene* v. *Collins*, 30 Cliff. 494; *Gaylord* v. *Soragen*, 32 Vt. 110 (76 Am. Dec. 154); *Hill* v. *Spear*, 50 N. H. 252 (9 Am. Rep.

205); *Peck* v. *Briggs*, 3 Denio, 107; *McIntyre* v. *Parks*, 3 Met. 207; *Banchor* v. *Mansel*, 27 Me. 58.

The law encourages a repudiation of the illegal contract, even by a guilty participator, as long as it remains an executory contract, or the illegal purpose has not been put in operation: *Stacy* v. *Foss*, 19 Me. 335 (36 Am. Dec. 775); *Clark* v. *Brown*, 77 Ga. 606 (4 Am. Dec. 98); *Gridley* v. *Dorn*, 57 Cal. 78; *Willis* v. *Hoover*, 9 Or. 418; *Crawford* v. *Spence*, 1 Am. St. Rep. 758; *Bledsoe* v. *Thompson*, 57 Am. Dec. 777. The latest American view of wagers is the correct one. It looks upon them as gambling, and the courts declare that they are illegal, because they are against good morals. It cannot be contended that it is good morals to seek to obtain another's money for nothing: *Wheeler* v. *Spencer*, 15 Conn. 30; *Lewis* v. *Littlefield*, 13 Me. 233; *Wilkinson* v. *Tousley*, 16 Minn. 299; *Shaffner* v. *Pinchback*, 133 Ill. 410.

LORD, C. J.—This was an action to recover the sum of five hundred and sixty dollars deposited with the defendant as a wager on the result of a foot race. The case was tried without the intervention of a jury, and the material facts as found by the court are : That the plaintiff deposited with the defendant the sum of five hundred and sixty dollars in gold for the benefit of one George Grant, and as a wager upon a foot race which said Grant and one Anderson were to run the next day at a place agreed upon; that at the time the said money was so deposited, it was understood by Grant and the defendant Taylor and the plaintiff that the money should be paid back to the plaintiff on his demand for the same at any time before the race should be run, which the defendant agreed to do; that before such race was run the plaintiff on two occasions demanded said money of the defendant, who refused to pay it back, but pretends that said race was run, and that Anderson was the winner, to whom he paid the money before the commencement of this action; that the race agreed to be run was not run, but that

Grant, at the appointed time, refused to run, and Anderson ran over the course alone and was declared by the defendant to be the winner; that said pretended race was never intended to be a fair and honest race, and that plaintiff knew at the time he deposited his money with the defendant that the race was to be a "bogus race"; that the parties engaged in getting it up, namely, Grant, Anderson, and the defendant, wanted to "rope in" somebody; that it was understood that Grant was to win the race; that the plaintiff furnished the money and deposited it with the defendant as stakeholder for the benefit of Grant, in whom he had confidence at the time, but of whom, before the time appointed for the race to come off, he became suspicious; that he feared he would lose the money, and thereupon, by reason of such suspicion, and by virtue of the agreement with the defendant, demanded of the defendant the return of said money, and that said Grant then and there, before the time of running the race had arrived, demanded of the defendant the repayment of the money to the plaintiff, etc. Substantially upon such findings, the court found as a conclusion of law that the plaintiff was entitled to judgment for the sum of five hundred and sixty dollars and interest, and for costs, etc. From this judgment, the appeal has been brought to this court.

1. The first contention for defendant is, that wagers or wagering contracts upon indifferent subjects are valid in this state by force of the common law, except when prohibited by statute. There can be no doubt that wager contracts upon indifferent matters were valid at common law: *Goode* v. *Elliott*, 3 T. R. 693; *Jones* v. *Randall*, 1 Cowp. 37; *Da Costa* v. *Jones*, 2 Cowp. 734; *Bunn* v. *Riker*, 4 Johns. 427 (4 Am. Dec. 292). But all wagers which tended to a breach of the peace, or to injure the feelings, character, or interests of third persons, or which were against the principles of morality, or of sound policy, were void at common law: 4 Kent's Com. 466; Greenhood, Pub. Pol. 226. And all wagers in contraven-

tion of the positive provisions of any statute are also void. Of late years, by legislation and judicial decision, the hostility to wagers of every nature has been marked. This is doubtless due to the increase of betting and the evil consequences resulting therefrom. As O'NEAL, J., said: "Every bet tends directly to beget a desire of possessing another's money or property without an equivalent. Men acted upon by such influences easily become gamblers, and then the road to every other vice is broad and plain": *Rice* v. *Gist*, 1 Strob. (S. C.) 84. And the tendency of judicial opinion in repudiating all kinds of wagers is well illustrated in *Love* v. *Harvey*, 114 Mass. 82, wherein GRAY, C. J., says: "It is inconsistent with the policy of our laws and with the performance of duties for which courts of justice are established, that judges and juries should be occupied with every frivolous question upon which idle and foolish persons may choose to lay a wager." Equally emphatic is BELFORD, J., in *Eldred* v. *Malloy*, 2 Col. 321, wherein he says: "If we enter upon the work of settling bets made by gamblers in one case, *  *  * we may despair of ever finding time for the dispatch of these weightier matters which affect the person and property rights of the respectable people in this territory. If the gate is once opened for this kind of litigation, it is more than probable we may be overrun with questions arising out of bets. The spirit of our laws discountenances gambling." Wagers are inconsistent with the established interests of society, and in conflict with morals of the age, and as such they are void as against public policy. In view of these considerations, we do not think that such transactions, though upon indifferent subjects, are valid in this state.

2. The next contention for the defendant is, that the alleged agreement was corrupt, illegal, and criminal in this, that it was in advance "fixed" that one of the parties should win, and that certain persons should lose their money; in other words, that the agreement had in contemplation "a job race." This, it is claimed, put the

plaintiff *in pari delicto* with the defendant, and as a consequence he is entitled to the benefit of the rule *potior est conditioni possidentis.* The general rule is, that the law will not interfere in favor of either party in *pari delicto,* but will leave them in the condition in which they are found, from motives of public policy. There is no doubt, where money has been paid on an illegal contract which has been executed, and both parties are *in pari delicto,* the courts will not compel the return of the money so paid. But the cases show that an important distinction is made between executory and executed illegal contracts. While the contract is executory, the law will neither enforce it nor award damages, but the party paying the money, or putting up the property, may rescind the contract and recover back his money. If the contract is already executed, nothing paid or delivered can be recovered back. This arises out of a distinction between an action in affirmance of an illegal contract and one in disaffirmance of it. In the former, such an action cannot be maintained, but in the latter, an action may be maintained for money had and received. The reason is, that the plaintiff's claim is not to enforce, but to repudiate, an illegal agreement: Wharton, Con. § 354. In such case there is a *locus penitentiæ;* the wrong is not consummated, and the contract may be rescinded by either party.

In *Edgar* v. *Fowler,* 3 East. 225, Lord ELLENBURG said: "In illegal transactions the money has always been stopped while it is *in transitu* to the person entitled to receive it." As Lord Justice MELLISH said: "To hold that the plaintiff is entitled to recover does not carry out the illegal transaction, but the effect is to put everybody in the same situation as they were before the illegal transaction was determined upon, and before the parties took any steps. If money is paid or goods delivered for an illegal purpose, the person who has so paid the money or delivered the goods may recover them back before the illegal purpose is carried out; but if he waits till the illegal purpose is carried out, or if he seeks to enforce

the illegal transaction, in neither can he maintain an action; the law will not allow that to be done": *Taylor* v. *Bowers,* 1 Q. B. Div. 291. In *Hasleton* v. *Jackson,* 8 Barn. & Cress. 221, which was an action by one of the parties to a wager on the event of a boxing match, commenced against the stakeholder after the battle had been fought, LITTLEDALE, J., said: "If two persons enter into an illegal contract, and money is paid upon it by one to the other, that may be recovered back before the execution of the contract, but not afterwards": *Smith* v. *Beckman,* 4 Taunt, 474; *Tappenden* v. *Randall,* 2 Bos. & Pul. 467; *Lowrig* v. *Bourdien,* 2 Doug. 452; *Mount* v. *Stokes,* 4 T. R. 561; *Utica Ins. Co.* v. *Kip,* 8 Cow. 20; *Meritt* v. *Willard,* 4 Keys (N. Y.), 208; *White* v. *Franklin Bank,* 22 Pick. 181; *O'Brien* v. *Fitzpatrick,* 48 Ark. 490. "And this rule," says Mr. Justice WOODS, "is applied in the great majority of the cases, even when the parties to an illegal contract are *in pari delicto,* because the question which of two parties is the more blamable is often difficult of solution, and quite immaterial": *Spring Co.* v. *Knowlton,* 103 U. S. 60. The object of the law is to protect the public, and not the parties. This is upon the principle that it best comports with public policy to arrest the illegal transaction before it is consummated: *Stacy* v. *Foss,* 19 Me. 335 (36 Am. Dec. 755).

3. It only remains to apply these principles to the facts. These show that the plaintiff was cognizant that the race had been fixed in advance—that one of the parties should win, and that certain other persons should lose their money—that it was a bogus race, and the arrangement based upon it corrupt, and designed to cheat and defraud the other parties; but at the same time, they show that he repented and repudiated the transaction before it was consummated, by demanding the return of his money the evening of the day before the race, and on the day of the race, but before it was to come off, and that the defendant refused to pay it back, and that he afterwards forbade the defendant to pay said money to any other per-

son than himself.   He availed himself of the opportunity which the law affords a person to withdraw from the illegal contract before it has been executed ; he repented before the meditated wrong was consummated, and twice demanded to withdraw his money, and thereby rescinded the contract.   To allow the plaintiff to recover does not aid or carry out the corrupt and illegal transaction, but the effect is to put the parties in the same condition as they were before it was determined upon.   By allowing the party to withdraw, the contemplated wrong is arrested, and not consummated.   This the law encourages, and no obstacle should be thrown in the way of his repentance. Hence, if the plaintiff retreated before the bet had been decided, his money ought to have been returned to him, and in default of this, he is entitled to recover.

There was no error, and the judgment must be affirmed.

---

[ Argued Dec. 8, 1892; decided Jan. 16, 1893; rehearing denied July 13, 1893.]