URWAN, Respondent, vs. NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Appellant.

*May 6—June 23, 1905.*

*Life insurance: Policy: Special contract: Contemporaneous transactions: False representations: Deceit: Cause of action: Pleading: Construction: Action to recover premium: In pari delicto: Statutes.*

1. An application for a policy of life insurance and an application for a special agent's contract were executed and the first year's premium on the policy paid, all on the same day. The policy and agency contract were subsequently delivered and refused because not complying with the representations under which the applications were solicited. *Held*, that the two contracts thus applied for, though separate in form, must be considered together for the purpose of determining the character of the transaction and the intention of the parties.

2. When an application for a contract is delivered and the money consideration therefor paid on a representation that the contract, when executed, would contain certain things then represented and guarantied, this is nothing more than a promise as to what the contract, when subsequently prepared and executed, should contain, and a breach of such promise does not constitute a cause of action in tort for false and fraudulent representations.

3. In an action to recover back the premium paid on a policy of life insurance, because it and a contemporaneous agency contract did not conform with those which were represented would be delivered, the allegations of the complaint, stated by the court, are *held* not to set out a cause of action for deceit.

4. In such case, under the evidence, stated in the opinion, the plaint-iff is *held* to have had a lawful right to reject the policy and agency contract and recover back the money paid, because the contract as tendered differed essentially from the one promised.

5. Sec. 1955o, Stats. 1898, provides: "No life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectation of life in the amount or payment of premiums or rates charged for life or endowment policies, or in dividends or other benefits payable thereon, or in any other terms and conditions of the contract it makes; nor shall any such company or any agent thereof make any contract or agreement as to such contract other than is plainly expressed in the policy issued pursuant thereto, nor pay or allow, or offer to pay or allow, as an inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever not specified in the policy," and requires the commissioner of insurance to revoke the license of any company or person violating the section. *Held*, that a special agency contract, contemporaneous with and a part of the transaction of issuing a life insurance policy, wherein the duties of the policy-holder as agent consisted solely of sending yearly to the company the names of ten persons who would be, in his judgment, good, insurable risks, and wherein he was to receive a fixed compensation therefor, and from which agency he was not to be removed except for cause, after notice and hearing, was contrary to the statute and void.

6. In such case, in an action to recover back the premium paid for the policy, the insured is *held* not to be *in pari delicto* with the insurer, and as he did not seek the aid or affirmance of the illegal contract, but a disaffirmance of it, he could maintain the action.

APPEAL from a judgment of the circuit court for Oconto county: SAMUEL D. HASTINGS, Circuit Judge. *Affirmed.*

This is an action to recover $159.55 paid by the plaintiff to the defendant February 5, 1903, as the first annual premium for a policy of insurance upon the plaintiff's life of $5,000, on the twenty-payment life plan, to be issued by the defendant under the circumstances hereinafter named, with interest thereon from the day named. The complaint alleges

in effect that the making of the application and payment of the premium mentioned by the plaintiff was induced by the defendant by false and fraudulent representations made by the defendant to the plaintiff, and upon which the plaintiff relied, to wit: The defendant represented and guarantied to the plaintiff that by such application he would, if the same should be granted and the policy issued, thereby become a member of the defendant's state board of special agents in Wisconsin for twenty years, if his policy continued so long in force, and represented and guarantied to the plaintiff that his duties as a member of such board would consist solely in doing the things therein alleged and represented, and guarantied to the plaintiff that he would not and could not, under the defendant's rules, be removed from his position on the board except for cause and after notice and hearing, and represented and guarantied to the plaintiff that, for his services as such member as therein set forth, he would receive as compensation the several amounts therein stated, which amounts were fixed and absolute and depended upon no contingency, and represented and guarantied to the plaintiff that the premium upon his policy was fixed and unchangeable in amount, with no right under the law for the defendant to levy any assessment on the plaintiff or on any of its policy-holders, or to reduce the amount payable to the plaintiff upon settlement under the policy; that such guaranties and representations were false and fraudulent in this: that the contract tendered by the defendant to the plaintiff differed in several respects, as therein stated, from the one so represented and guarantied (particularly as to the duties to be performed by the plaintiff, and as to his removal without notice or hearing, and as to his compensation being unfixed and dependent upon contingencies); that the defendant had the legal right to levy assessments upon the plaintiff and other policy-holders; that the premium on the plaintiff's policy was not fixed and unchangeable; that the defendant had

the right to reduce or scale down the amount to be paid' to the plaintiff upon settlement under the policy,—all of' which facts were known to the defendant at the time and un-- known to the plaintiff; that the plaintiff believed and de- pended upon such false and fraudulent representations and: guaranties in making such application and paying such pre- mium, and the same were a material consideration to plaintiff' in making the contract; that the defendant knew that they, were false and fraudulent, and that the plaintiff believed and depended upon them as material to the contract; that Feb- ruary 14, 1903, the plaintiff received by. mail the policy of insurance so contracted for, and the contract referred to, as a member of the defendant's state board of special agents, which contract the plaintiff never signed, for the. reason that after making such application he discovered that such repre- sentations and guaranties were false and fraudulent, as above stated, and as learned from such proposed written contract, and so refused to accept of such proposed contract and pol- icy, and immediately notified the defendant of such nonac- ceptance, and held the same subject to the defendant's order, and offered to return the same, and demanded repayment of the premium so paid, all of which the defendant refused. The defendant answered by way of admissions, denials, and counter allegations to the effect that it was agreed that the written application should be the only basis for issuing the policy, and the same was issued in reliance thereon; that at the time of making such application the plaintiff also made application in writing to be appointed one of the defend- ant's special board agents, and he was thereupon duly ap- pointed as such, without any consideration therefor.

A jury having been waived and trial had, the court found as matters of fact, in effect, that the plaintiff was induced to apply for such policy and contract and pay the $159.55 by the defendant's representations that the plaintiff would, upon receiving the policy, thereby become a member of such board

of special agents for twenty years, if the policy continued so long in force; that his duties as such member would consist solely in sending yearly the names of ten persons who should be, in his judgment, good, insurable risks; that the plaintiff would not and could not be removed except for cause, after notice and hearing, and that the plaintiff should receive as compensation therefor the several sums named in the complaint, which amounts were fixed, absolute, and depended upon no contingencies; that the written contract tendered by the defendant to the plaintiff in pursuance of such application did not require the plaintiff, in addition to sending ten names, as mentioned, to perform all other duties required of him by the defendant, nor that the plaintiff might be removed as such member of the board without notice and hearing; that such written contract did not provide that the plaintiff should receive the fixed and stated sums as compensation as represented by the defendant, but, on the contrary, provided that he should share in a certain fund, the amount of which depended upon the amount of business to be done by the defendant each year, and that such representations that his compensation should be fixed and absolute were false; that such false representations were the inducement which caused the plaintiff to apply for such policy and contract, and pay the $159.55; that the policy and contract were so applied for and the $159.55 so paid February 5, 1903; that, promptly upon the receipt of the policy and contract, the plaintiff declined to accept the same, and promptly offered to return the policy and written contract, and demanded the repayment of the $159.55 so paid, but the defendant refused to accept the policy and contract and repay the money. And as conclusions of law the court found, in effect, that the plaintiff was entitled to judgment against the defendant for $159.55, with interest from February 5, 1903, and costs of suit. From the judgment entered thereon accordingly, the defendant appeals.

For the appellant there were briefs by *Burr W. Jones,* attorney, and *Brown & Kerr,* of counsel, and oral argument by *Mr. Jones.*

For the respondent there was a brief by *Classon & Classon,* and oral argument by *D. G. Classon.*

CASSODAY, C. J. 1. The plaintiff's written application for insurance was made and signed by him February 5, 1903, and was in the usual form, with answers to questions by the medical examiner and the answers of the medical examiner, with this indorsement upon the margin in red ink: "It is agreed that the company is responsible for no representations not contained in its ratebook and printed matter." The plaintiff's written application for appointment as one of the defendant's "board of special agents, limited to 400 full, or proportionate number of half members, under its special agent's contract for Wisconsin," was made at the same time and was dated on the same day as the application for the policy; and it was therein stated, in effect, that the plaintiff understood that he should not be required to take out a policy because of his application or the issuance to him of such agency contract, and that his compensation was to be for services actually rendered. That application was witnessed by the defendant's local agent, "P. J. Bryan"—the same person to whom the plaintiff paid the $159.55, and who "witnessed and recommended" the plaintiff's application for the policy. The policy and special agent's contract are both signed by the president and secretary of the defendant, and both dated February 11, 1903, being six days after the plaintiff had signed such applications. Such policy and written contract were received by the plaintiff by mail from the defendant February 14, 1903, accompanied by a letter from the defendant's president stating "in explanation" that such contract was "entirely independent of" the plaintiff's policy; that he would "be required to perform the duties set forth

in the special contract;" and that he was "thereby advised" that it was "a rule of the company that, should a special agent holding special contract permit his policy to terminate by reason of nonpayment of premium," it should "be deemed that he" had "ceased to give the company the benefit of his influence and good will," and had "forfeited all rights under said contract," and then, by way of postscript, added "that, in order to avail oneself of the privileges of the special contract, the agent must also continue payment of the premium for the full term provided by his policy." The answer alleges and the defendant claims that the $159.55 here sought to be recovered back was paid by the plaintiff to the defendant exclusively as the first year's premium on the policy, and that that was a transaction entirely separate and independent of the plaintiff's application to be appointed as one of the defendant's board of special agents, mentioned, and which appointment was to be made without consideration. But in order to make such appointment effectual the plaintiff was bound by the terms of the contract to continue the payment of the premium for the full term of the policy, and he was induced to pay the first year's premium on the policy in order to secure the special agent's contract as well as the policy. In other words, the two contracts thus applied for, though separate in form, were both agreed upon at the same time as one transaction, and must be considered together for the purpose of determining the character of the transaction and the intention of the parties. *Herbst v. Lowe,* 65 Wis. 316, 320, 26 N. W. 751, and cases there cited; *Stapleton v. Brannan,* 102 Wis. 26, 28, 78 N. W. 181, and cases there cited. The trial court properly so considered them.

2. It is claimed that the false and fraudulent representations alleged in the complaint and found by the trial court are not sustained by the evidence. This claim is based upon the theory that such representations were all alleged and found to have been made at the time the plaintiff signed such

applications and paid such premium, February 5, 1903, and related to the things which were to be contained in the contract which it was then agreed that the defendant should subsequently prepare and execute, and which the defendant did not execute until six days thereafter, and which the plaintiff did not receive until nine days thereafter. In other words, and in consideration of such applications so signed by plaintiff and the money so paid by the plaintiff, the defendant, through its local agent, "represented and guarantied to the plaintiff," to use the language of the complaint, that such contract, when so executed, would contain the things so "represented and guarantied to the plaintiff." This was nothing more than an agreement or promise as to what the contract, when subsequently prepared and executed, should contain. The breach of such an agreement or promise did not constitute a cause of action in tort for false and fraudulent representations.

"It is well settled that such representations are not actionable unless they were not only relied upon by the vendor, but related to some present or past state of facts; that the mere failure to perform a promise or to make good subsequent conditions which had been assured is insufficient to maintain an action for deceit." *Field v. Siegel,* 99 Wis. 605, 609, 75 N. W. 397, and cases there cited. See *Warner v. Benjamin,* 89 Wis. 290, 296, 62 N. W. 179; *Louis F. Fromer & Co. v. Stanley,* 95 Wis. 56, 64, 69 N. W. 820; *Patterson v. Wright,* 64 Wis. 289, 25 N. W. 10.

In drawing the complaint in the case at bar the pleader seemingly did not have in mind the broad distinction between a false representation as to a present or past state of facts, as the basis of an action in tort, and a representation or promise as to future conditions and things subsequently to be performed or furnished or supplied. But the complaint, when carefully analyzed, must be construed as indicated. This is apparent when it is observed that the false representations

are therein alleged to have been made February 5, 1903, and that their falsity was discovered when the plaintiff received the policy and contract by mail, February 14, 1903. And so the learned trial judge states in his written opinion that the plaintiff's "case does not rest upon an alleged guaranty and its breach, but upon the false representation as to the terms of the written contract that the defendant was to give him. . . . He merely falsely represented to the plaintiff the terms of the written contract that the company would make with him as an inducement to his taking the policy of insurance." We are constrained to hold that the complaint, when properly construed, did not allege that the representations made constituted a cause of action for deceit, and the findings of the court are in line with the allegations of the complaint. But it does not follow that the plaintiff has no cause of action for rescinding the contract and recovering back the money paid. On the contrary, and according to the findings of the court, the proposed written contract which the defendant prepared and executed and sent to the plaintiff differed essentially from the one which the defendant had orally agreed to give to the plaintiff, and which had constituted the inducement for him to sign the two applications and pay the $159.55. This being so, it is claimed that the plaintiff had the lawful right to reject the written contract and policy and demand back his money, as he did. *Woodle v. Whitney,* 23 Wis. 55; *Rounsavell v. Pease,* 45 Wis. 506; *School District v. Hayne,* 46 Wis. 511, 1 N. W. 170; *Sherwood v. Merritt,* 83 Wis. 233, 53 N. W. 512; *Parry Mfg. Co. v. Tobin,* 106 Wis. 286, 289, 82 N. W. 154. The proposition of law stated is elementary. 24 Am. & Eng. Ency. of Law (2d ed.) 643. The only question is whether such right of action is barred by reason of the statute about to be cited, as claimed by the defendant.

3. On the part of the plaintiff it is contended that, had the

policy of insurance and the special agent's contract been accepted by the plaintiff, they would have been absolutely void, under the statute which declares that:

"No life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectation of life in the amount or payment of premiums or rates charged for life or endowment policies, or in the dividends or other benefits payable thereon or in any other of the terms and conditions of the contract it makes; nor shall any such company or any agent thereof make any contract or agreement as to such contract other than as plainly expressed in the policy issued pursuant thereto, nor pay or allow, or offer to pay or allow, as an inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever not specified in the policy." Sec. 1955o, Stats. 1898.

The manifest purpose of this section of the statute was to prohibit any distinction or discrimination in favor of insurants of the same class and equal expectation of life, and to prohibit the making of any contract or agreement as to such insurance not expressed in the policy, and to prohibit any rebate of premium payable on the policy as an inducement to insurance, or any special favor or advantage not specified in the policy. Such provisions are followed by a requirement that the commissioner of insurance shall revoke the license of any company or person violating the section. A similar statute in Maine was construed in that state "to require life insurance companies to give equal terms to those persons whom it insures that are of the same class, and to stipulate the terms of insurance in their policies, and to accord to none any other." *State v. Schwarzschild,* 83 Me. 261, 22 Atl. 164. So, under a similar statute in Michigan, it was held in that state that an action could not "be maintained by the company on a note given for the premium on" a policy issued by the company in violation of such statute.

*State Life Ins. Co. v. Strong,* 127 Mich. 346, 86 N. W. 825.
In that case as in this, counsel for the company contended
that the contract for the "insurance was separate and distinct
from the advisory representative contract," but the court
held "that they were both a part of one transaction, and
within the prohibition of the statute." Following that de-
cision, it was subsequently held in that state that such stat-
ute was "violated where an insurance company contracts to
pay one of its officers a stated percentage of its premium re-
ceipts, with the understanding that the same shall be ap-
portioned among certain persons, to be known as a 'board of
reference,' as an inducement to their becoming policy-hold-
ers in the company." *Citizens' Life Ins. Co. v. Comm'r of
Ins.* 128 Mich. 86, 87 N. W. 126. So, in a later case in that
state, the local insurance agent, in violation of such statute,
had induced the defendant to take the insurance by giving
him the benefit of the agent's commission of one half the
premium—taking the note in suit for the balance,—and in
an action by such agent on such premium note, the amount
of which the agent had himself paid to the company, it was
held that the note was void for want of consideration by rea-
son of the illegality of the insurance contract. And it was
further held that it was the duty of the court to take notice
of such illegality without its being pleaded in defense of the
action on the note. *Heffron v. Daly,* 133 Mich. 613, 95 N.
W. 714. It is well settled that a contract made in violation
of a valid statute is void, although it does not therein ex-
pressly so declare. 9 Cyc. 475, 476, and numerous cases
there cited. So "a statute prohibiting the making of con-
tracts, except in a certain manner, *ipso facto* makes them
void, if made in any other way." Id.; *Ætna Ins. Co. v.
Harvey,* 11 Wis. 394; *Melchoir v. McCarty,* 31 Wis. 252;
*Citizens' Bank v. Jones,* 117 Wis. 446, 452, 453, 94 N. W.
329, and cases there cited; *Miller v. Post,* 1 Allen, 434;
*Sawyer v. Smith,* 109 Mass. 220; *Copeland v. Boston Dairy*

*Co.* 184 Mass. 207, 68 N. E. 218; *Bank of U. S. v. Owens,* 2 Pet. 527; *Foley v. Speir,* 100 N. Y. 552, 3 N. E. 477; *Buckley v. Humason,* 50 Minn. 195, 52 N. W. 385. It is obvious that the insurance contract applied for by the plaintiff, and upon which he paid the first premium of the twenty annual instalments, and which the defendant at the time of such payment agreed to execute and send to the plaintiff, was contrary to the statute, and hence void. This is virtually conceded by counsel for the defendant. But it is claimed that, while either party could successfully resist the enforcement of such a contract, neither could recover upon a cause of action based upon or traceable through such illegal contract. This is on the theory that the parties are *in pari delicto,* and the law leaves them where it finds them. Numerous adjudications of this court are cited by counsel in support of the proposition. There is no intention here of departing from the established rule in such cases. But there are exceptions to the rule. Thus Lord MANSFIELD, C. J., mentions "two sorts of prohibitions enacted by positive law, in respect of contracts." The first is "to protect weak and necessitous men from being overreached, defrauded, or oppressed. There the rule . . . does not hold, and an action will lie, because, where the defendant imposes upon the plaintiff, it is not *par delictum.*" The other "sort of prohibitions is founded upon general reasons of policy and public expedience. There both parties offending are equally guilty." *Clarke v. Shee,* 1 Cowp. 197. The exception thus stated has been expressly sanctioned by this court in some of the cases cited by counsel for the defendant. *Melchoir v. McCarty,* 31 Wis. 252, 255; *Clarke v. Lincoln L. Co.* 59 Wis. 655, 661, 18 N. W. 492. In the case last cited, Mr. Justice TAYLOR, speaking for the court, mentions that exception and another in the following language:

"The cases . . . in which the court has held that money paid upon a void contract may be recovered back by the payor

are cases either where the contract itself is not prohibited by law, but is declared to be void because not made or evidenced in the manner prescribed by law, or where the contract is declared void by law as to one party in order to protect the other against injustice and oppression."

Counsel for the defendant concedes that in enacting the statute in question "the intention of the legislature undoubtedly was to protect policy-holders in general against any distinction or discrimination." The penalty prescribed by the statute in question is to revoke the license of "any company, officer, agent, subagent, broker or solicitor" who "has violated any provision" of the section. The statute inflicts no penalty or forfeiture upon the insurants so sought to be protected. Such protection, in the language of the English court quoted, was "to protect" such policy-holders "from being overreached, defrauded, or oppressed." Besides, the contract of insurance was not fully executed. On the contrary, it was not only executory in form, but the terms, which were to be in writing, were not yet completely agreed upon. The mere fact that the plaintiff had signed such applications and paid such first instalment did not preclude him from the right of inspecting the written contract and policy when received. Upon such inspection he had the legal right to accept or reject the same, of course subject to any conditions the law imposed. It was not complete without acceptance, expressed or implied. The plaintiff having promptly rejected the written contract as not being the one contracted for, the only remaining question is whether he can recover back the money so paid. It is said in a very recent English treatise that an action "may be maintained to recover back money received under a special contract which has been abandoned or rescinded, or the performance of which has been prevented by the wrongful act of the party who has received the money." Addison, Contracts (10th ed.) 433. And again, "So long as an illegal contract continues executory,"

the law "implies from the person who has received money in
furtherance of the execution of the contract a promise to re-
fund it, in favor of the party who paid the money and who
repudiates the illegal transaction, and an action upon this
implied promise may be maintained against a person who
has received money upon an illegal insurance or wager at any
time before the happening of the event which is to, decide the
adventure." Id. Among the cases cited in support of the
statement are the following: *Tenant v. Elliott,* 1 Bos. & Pul.
3; *Farmer v. Russell,* 1 Bos. & Pul. 296; *Tappenden v. Ran-
dall,* 2 Bos. & Pul. 467, 470, 471; *Smith v. Bickmore,* 4
Taunt. 474; *Palyart v. Leckie,* 6 M. & S. 290; *Hastelow v.
Jackson,* 8 B. & C. 221; *Varney v. Hickman,* 57 E. C. L.
271; *Clarke v. Shee, supra.* See, also, *White v. Franklin
Bank,* 22 Pick. 181. Thus it was held in New York at an
early day that, "where money is advanced upon a contract
which is *malum prohibitum* merely, it may be recovered back
by an action proceeding upon a disaffirmance of the contract."
*Utica Ins. Co. v. Kip,* 8 Cow. 20. So it has been held that
"while an illegal contract is still executory either party may
rescind the contract and recover any property he may have
put up, but, if the contract has been executed, nothing paid
or delivered can be recovered." *Bernard v. Taylor,* 23 Oreg.
416, 31 Pac. 968. To the same effect, *Spring Co.. v. Knowl-
ton,* 103 U. S. 49. In the case at bar the plaintiff does not
seek the aid or affirmance of the illegal contract, but a dis-
affirmance of it, and to place the parties where they were be-
fore they attempted to make the contract. We find nothing
in the decisions of this court to the contrary. See *Kiewert v.
Rindskopf,* 46 Wis. 481, 486, 1 N. W. 163; *Wells v. Mc-
Geoch,* 71 Wis. 196, 235, 236, 35 N. W. 769. We conclude
that the action can be maintained.

*By the Court.*—The judgment of the circuit court is af-
firmed.