E. J. HIMMELMAN v. GUS PECAUT and CHAS. F. PECAUT,
Appellants.

**Statute of frauds:** ORIGINAL PROMISE.   The agreement to save a
1   stakeholder harmless from the demands of one of the parties
to a wager, if he will pay the amount of the wager to the
promisor, is an original promise and not within the Statute
of Frauds.

**Betting:** INDEMNITY TO STAKEHOLDER: VALIDITY.   A stakeholder who
2   has paid the wager over to one of the parties without having
undertaken to decide who was the winner, but solely on the
strength of an agreement to repay the same in case it should
be determined that he was not entitled thereto, may enforce
the agreement.

*Appeal   from   Woodbury   District   Court.*— HON.   WM.
HUTCHINSON, Judge.

TUESDAY, MARCH 5, 1907.

THIS action was begun before W. T. Stafford, a justice
of the peace, who sustained a demurrer to the petition.   A
writ of error was sued out to the district court, where the
ruling of the justice was reversed, and the cause remanded.
The defendants, having procured an appropriate certificate,
appeal.— *Affirmed.*

*Fred W. Sargent,* for appellants.

*Wilbur Owen,* for appellee.

Ladd, J.— The petition alleged that Gus Pecaut and Len Lessenich wagered $50 each on a horse race, and deposited the same with plaintiff as stockholder; that thereafter Pecaut, claiming to have won the bet, demanded the money, which plaintiff declined to pay over; "whereupon the defendants promised and agreed and contracted with the plaintiff that, if he would pay said money to Gus Pecaut, then, in the event that this plaintiff should be obliged to return any of said stake money to the said Len Lessenich, that they would repay him and save him harmless from all costs, liability, damages, and expenses; that plaintiff paid said money to Gus Pecaut; and that thereafter, on or about the 19th day of September, 1902, in a certain suit instituted by the said Len Lessenich against this plaintiff, it was adjudged by the court that the plaintiff should return the said Len Lessenich the sum of fifty dollars ($50.00) and $4.20 costs of said action," which he accordingly did. To this petition defendants demurred on the grounds (1) that the alleged promise of Chas. F. Pecaut was within the statute of frauds, and (2) that the arrangement was a gambling contract or the consideration was the performance of such a contract.

I. The first ground is not insisted on in argument, nor could it be, for, as averred, the promise does not purport "to answer for the debt, default, or miscarriage of another."

1. Statute of frauds: original promise.

It was an original undertaking of each defendant, based on ample consideration — i. e., the surrender of the money to Gus Pecaut — and one was under precisely the same obligation to pay as the other, though the benefits derived therefrom may have differed. That, however, was of no concern to plaintiff,

who parted with the money in reliance on the promise as made by both.

II. Wagers on indifferent matters were lawful at common law, and might be recovered, but these were held to exclude all such as might incite a breach of the peace, or tended to immorality, or affected the feelings or interest of third persons, or might expose them to ridicule, or libel, or were against sound public policy. *Good v. Elliott,* 3 Term R. 693; *Bunn v. Riker,* 4 Johns. (N. Y.) 426 (4 Am. Dec. 292). Courts have differed as to whether bets on horse races were within these exceptions. See cases collected in 14 Am. & Eng. Ency. of Law (2d Ed.) 598. The practice has been approved in Texas. *Dunman v. Strother,* 1 Tex. 89 (46 Am. Dec. 97), but that court has drawn the line against betting on a game of ninepins. *Monroe v. Smelly,* 25 Tex. 586 (78 Am. Dec. 541). The judges have quite generally expressed regret, however, that courts ever should have undertaken to settle frivolous questions upon which the idle or foolish may choose to stake their money, and, independent of legislation, several courts have declared that " wagers are inconsistent with established interests of society and in conflict with the morals of the age, and as such are void, as against public policy." *Bernard v. Taylor,* 23 Or. 416 (31 Pac. 968, 18 L. R. A. 859, 37 Am. St. Rep. 693); *Monroe v. Smelly,* 25 Tex. 586 (78 Am. Dec. 541. In this State the making of any bet or wager for money or property of value is denounced as a misdemeanor (section 4964, Code), and " all promises, agreements, notes, bills, bonds or other contracts, mortgages, or other securities, when the whole or any part of the consideration thereof is for any money or other valuable thing won or lost, laid, staked or bet, at or upon any game of any kind or on any wager, are absolutely void and of no effect " (section 4965, Code). In *Shannon v. Baumer,* 10 Iowa, 210, the court held that money deposited with a stakeholder on a wager might be recovered at any time before being paid to the winner. This was on the

*Margin note:* 2. BETTING: indemnity to stakeholder: validity.

ground that he might repent of his illegal contract by dis-
affirming it, and recover the amount as money had and re-
ceived. See, also, *Adkins v. Fleming,* 29 Iowa, 122. But
money paid the winner by the stakeholder without notice
from the loser not to do so will not be restored. *Thrift v.
Rodman,* 13 Iowa, 25; *Trenery v. Goudie,* 106 Iowa, 693.
Nor will a general claim by the loser that he has won con-
stitute sufficient notice of disaffirmance. *Okerson v. Crit-
tenden,* 62 Iowa, 297. Ordinarily, in the absence of an
understanding to the contrary, the stakeholder is to decide
upon the happening of the event who is the winner. *Smith
v. Smith,* 21 Ill. 244 (74 Am. Dec. 100). Having decided,
the courts will not review his decision. Trenery v. Goudie,
*supra.* But see *Lewis v. Breton,* 74 Ala. 317 (49 Am. Rep.
816), where payment of an election bet by the stakeholder
before the certificate of election had issued was adjudged
premature. Unless otherwise held by statute, the stake-
holder is held to be a depositary merely, not in *pari delicto*
with the parties making the wager. *Shannon v. Baumer,*
10 Iowa, 210; *Ball v. Gilbert,* 12 Metc. (Mass.) 397. The
money is but a naked deposit to be paid over to one on the
happening of a contingency, and it is no concern of the
stakeholder what the transaction between the parties may be.
*Sutphin v. Crosier,* 32 N. J. Law 462, is not an authority
to the contrary, for, in that State, acting as stakeholder is
denounced as a misdemeanor, and for this reason he is held
to be a participant.

If, then, the plaintiff was guilty of no wrong in re-
ceiving the money as stakeholder, it is not perceived upon
what principle he should be denied the right to recover
upon an independent contract with these defendants. It
is not alleged that he undertook to decide who was the
winner or paid over the money to Gus Pecaut because en-
titled thereto. Indeed, the record contains no intimation
of which one had the fastest horse, and we must assume
that the judgment upon which the stakeholder paid Les-

senich the money put up by him was valid.    The plaintiff performed the condition which entitled him, under the agreement, to repayment by the defendants, and the question is whether this was so tainted with the illegal transaction of betting that he ought not to be allowed to enforce such agreement.

According to the petition the money was not turned over to defendants in pursuance of the wager, but of this agreement.    The plaintiff was in lawful possession of the money.    The promise to repay was not conditional on Lessenich being found to be the winner, nor could that question have been determined in the action by Lessenich against the plaintiff.    As the money does not appear to have been paid to Pecaut as winner, it would seem that Lessenich might withdraw it whenever he chose, and, for all the record discloses, recovery by Lessenich from plaintiff may have been on this ground.    In any event the agreement of plaintiff with defendants had no necessary relation to the misdemeanor committed in betting, and as held in *Peck v. Briggs,* 3 Denio (N. Y.) 107, a similar case, the maintenance of the action thereon " is not against the policy of the statute, but the reverse.    It disaffirms the wager and advances the policy of the law."    In *Columbia Bank & Bridge Co. v. Haldeman,* 7 Watts & S. (Pa.) 233 (42 Am. Dec. 229), the money was paid to Haldeman as the winner of an election bet after the stakeholder had been notified of its withdrawal by the loser, and in an action on a bond executed by the winner to the stakeholder to indemnify him for paying over the money, the court denied recovery on the ground that the stakeholder put himself in the place of the losing party, and, contrary to his wishes, paid the bet for him, and thereby assisted in accomplishing the unlawful object in making the wager.    As the bond was in aid of the winner's design to acquire the stake which the statute prohibited being put up, notwithstanding the withdrawal of the other party from the unlawful transaction, and as

neither party was entitled to the property wagered by the other, regardless of how the contingency on which their money was hazarded turned out, the payment of the stake to one of them as the winner on such an obligation was nothing less than aiding him to obtain by and through a trasaction prohibited by law, money to which he has no legal right. The allegations of the petition do not bring this case within the rule of the above decision, for, as already noted, the plaintiff did not undertake to determine who was winner nor pay the money to Pecaut as such. For all that appears, the right of electing to withdraw his wager was preserved to Lessenich notwithstanding the stake was handed to Pecaut, and, if so, the policy of the law, which encourages repentance of wrongdoing always was promoted by the agreement of Pecaut to reimburse plaintiff if this should happen. The demurrer was rightly overruled. — *Affirmed*.