Argued July 19, decided July 25; rehearing denied September 5, 1911.

## LEADBETTER v. HAWLEY.

[117 Pac. 289: 117 Pac. 505.]

CONTRACTS—"EXECUTED CONTRACT"—"EXECUTORY CONTRACT."

1. A contract is "executed" when all is done that its terms require to be performed, but until full performance the contract is "executory."

CONTRACTS—ILLEGAL CONTRACTS—DISAFFIRMANCE.

2. Plaintiff, who was a stockholder and holder of bonds of a corporation, delivered the bonds to defendant, who claimed to be a stockholder, and the parties agreed that defendant should retain the ownership of his stock and vote it as directed by plaintiff.' Defendant was not a stockholder. Defendant never voted, nor was he directed how to vote the stock. Held, that plaintiff could sue for recovery of the bonds, and thereby disaffirm the contract, though it was contrary to public policy, since, the contract remaining executory, ·the law will aid in recovery of the property delivered in part performance.

CONTRACTS—ILLEGAL CONTRACTS—RIGHT TO DISAFFIRM.

3. One may disaffirm a contract, invalid as against public policy, and recover property parted with thereunder, provided only the contract still remains executory, whether he was equally with the other party at fault, or was drawn into it by fraud, though in the latter case he may be more entitled to relief.

PLEADING—ALLEGATIONS—CONCLUSIONS FROM FACTS ALLEGED.

4. A complaint to recover property parted with under an illegal contract need not in so many words confess the illegality of the contract and plaintiff's fault, but a party is entitled to the benefit of any legal conclusions that may be properly drawn from the facts stated in his pleading; so that, plaintiff having stated all the facts from his standpoint, including the guile of defendant leading him into the situation from which he asks to be extricated, showing the contract is still executory, and it being discernible as matter of law that the contract was against public policy, and hence void, he is entitled to this conclusion, and the further conclusion that he is entitled to recover the property.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by F. W. Leadbetter against W. P. Hawley. The substance of the complaint is, that about January 1, 1906, the plaintiff being a stockholder in the

Crown-Columbia Pulp & Paper Company and the owner of $50,000 of its bonds delivered them to the defendant, who claimed to be also a stockholder in that company, on the agreement that the defendant should retain the ownership of his stock and vote the same as directed by the plaintiff, or would allow the plaintiff to vote it at all the stockholders' meetings of the corporation for the protection of the interest and holding of plaintiff in the corporation, to all of which the defendant agreed, but that afterwards the plaintiff discovered that the defendant did not own any stock in the company, and by reason of his misrepresentations on this subject had deceived and defrauded the plaintiff. The complaint further alleges that the plaintiff has demanded the return of the bonds, but that the defendant refuses to return them, and now wrongfully and unlawfully withholds possession of the same from the plaintiff, within Multnomah County, State of Oregon, to the damage of the plaintiff in the sum of $9,000. The prayer is for the recovery of the possession of the property, or, in case recovery cannot be had, for the value of the same in the sum of $50,000, with the damages claimed.

The defendant denies the alleged fraud and the agreement narrated in the complaint, under which plaintiff claims the bonds were delivered; admits the delivery of the bonds, but claims they were a gift from the plaintiff to the defendant.

The reply traverses the new matter in the answer. At the close of all the testimony, on motion of the defendant, the court directed a verdict for him on the ground that the transaction set out in plaintiff's complaint was an illegal contract, void as against public policy. From the consequent judgment, the plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Messrs. Cake & Cake,* with an oral argument by *Mr. H. M. Cake.*

For respondent there was a brief over the names of *Messrs. Chamberlain, Thomas & Kraemer,* and *Messrs. Dolph, Mallory, Simon & Gearin,* with oral arguments by *Mr. Warren E. Thomas* and *Mr. John M. Gearin.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. Stripped of its redundant verbiage, the complaint sets out a cause of action in replevin in the detinet to recover the bonds in question. Conceding, without deciding, that the contract drescribed in the complaint and the testimony in support thereof was contrary to public policy, the plaintiff's right to recover depends upon two conditions: First, the action must not be for the enforcement of the illegal agreement, but rather in disaffirmance of it; and, second, the contract must at the commencement of the action be yet in the executory stage. Whether we accept as a postulate the position of the plaintiff that he was induced by the fraud of the defendant to surrender possession of the bonds, or adopt the assumption of the defendant that the transaction detailed in the complaint is illegal to the extent that the court will not interfere with the existing situation created by the parties, this action proceeds in disaffirmance of the alleged contract. The plaintiff is in court, not in favor of his agreement, but in spite of it; not to enforce it, but to be relieved from it. If he were seeking to compel the defendant to vote his stock in a particular way, or to enjoin him from voting, or to recover damages for the result of his vote, it might be said that the object of the action was to enforce the contract. None of these things, however, appear. On the contrary, the plaintiff wishes to retrace his steps and to be restored to what is his own, irrespective of whatever contract was attempted by the parties, or either of them, whether legally or illegally. A contract becomes executed when all is done that its terms require to be performed. Until that situation is attained, the contract is executory.

2. The contract in question contemplated something to be done by the plaintiff, to wit: the delivery of the bonds. It also had in view something to be done by the defendant, viz., voting his stock as directed by plaintiff. As to the part to be performed by the defendant, the contract is clearly executory, for he makes no pretension that he ever voted or was directed how to vote in pursuance of the agreement. The defendant does not claim to have carried out his part of the agreement in the least. The principle underlying such affairs is that, until the illegal contract is executed, the law will aid in the recovery of the money paid or the property delivered in part performance of the illicit enterprise; but when it is fully accomplished the courts will be closed to both parties, and will leave them without remedy. This doctrine is illustrated in *Willis* v. *Hoover,* 9 Or. 418; *Bernard* v. *Taylor,* 23 Or. 416 (31 Pac. 968: 18 L. R. A. 859: 37 Am. St. Rep. 693). Other decisions of this court involving matters of this kind and refusing relief are where the plaintiffs sought to enforce the illegal contract, as in *Pacific Livestock Company* v. *Gentry,* 38 Or. 275 (61 Pac. 422: 65 Pac. 597), or where the unlawful agreement was fully executed, as in *Ah Doon* v. *Smith,* 25 Or. 89 (34 Pac. 1093).

There is testimony in the record upon which the plaintiff was entitled to go to the jury upon the question of fraud alleged in his complaint. On the defendant's theory of the contract being against public policy, the plaintiff had not yet passed the place of repentance, the agreement being yet executory; and, as he is proceeding in disaffirmance of the contract, he had a right to be heard before the jury and take its verdict.

The judgment is reversed.                    REVERSED.

Decided September 5, 1911.

## ON PETITION FOR REHEARING.

[117 Pac. 505.]

MR. JUSTICE BURNETT delivered the opinion of the court.

As we understand the defendant's petition for a rehearing of this action, he complains that the effect of our decision reversing the judgment of the circuit court is to allow the plaintiff to allege the fraud of the defendant as a cause of action and to recover on proof of the illegality of the transaction narrated in the complaint and testimony. He insists also in substance that, if the plaintiff would recover his bonds because of the vice of the agreement by which he was induced to part with them, he must in so many words confess its unlawfulness and ask to be relieved from its burdens.

3. As to the fraud, it is alleged as the inducement which led the plaintiff to make the contract, whether legal or not. No one seeks to recover damages for fraud, but rather for its hurtful effect. It is a mere incident of the transaction in question. Indeed, for the purpose of recovering property with which the plaintiff may have parted under an agreement void as against public policy, but which is yet executory, it matters not whether he entered into the arrangement by reason of the fraud of the other party or of his own free will and accord. Although *in pari delicto*, as held in *Cone* v. *Russell*, 48 N. J. Eq. 208 (21 Atl. 847), the recanting party may be restored to his own, if the place of repentance has not been passed by the complete execution of the illegal contract. Much more is he entitled to relief if he has been deceived by the other party and drawn into an offense against public policy.

4. Again, it is not necessary as a matter of pleading that the plaintiff should come into a court of law, prefacing his complaint with a *peccavi* and a general confession of his faults in the matter in hand, for those are

legal conclusions. He has stated all the facts from his standpoint, including the guile of the defendant leading the plaintiff into the situation from which he asks the court to extricate him. On any pleading the party making it is entitled to the benefit of any legal conclusion which may be properly drawn from the facts stated. So in this case, if it can be discerned as a matter of law that the agreement in pursuance of which the plaintiff parted with his bonds was contrary to public policy and hence void, he may rely on the further conclusion that he is entitled to recover the property, provided the unlawful convention is still in the executory stage.

The legal effect of the complaint is that the moving party is proceeding in disaffirmance of the iniquitous agreement in question. That it is yet executory arises from the fact that the delivery of the bonds by the plaintiff is the only act of performance by either party. None of the things to be done by the defendant has yet been performed. While this condition exists, the plaintiff may retrace his steps and by appropriate litigation recover his property; for, if the agreement was void as against public policy, it would not operate to pass the title to one who is a party to the illegal transaction. In *Spring Co.* v. *Knowlton,* 103 U. S. 49 (26 L. Ed. 347), the trustees of a corporation devised a scheme to increase its capital stock, whereby on payment of 80 per cent of the par value of the new stock, as called for by the trustees, subscribers to the same should receive fully paid certificates, but in default of meeting all the calls a delinquent should forfeit what he had already paid. Knowlton, a party to this arrangement, paid part of the 80 per cent and failed to pay the remainder. The corporation refused to issue to him the new stock or to repay the money he had advanced. The court sustained him in recovering his payments, on the ground that, although the scheme was void as against public policy

and he was a party to it, yet, as it was still in part executory, he was entitled to his money. In *Cone* v. *Russell,* 48 N. J. Eq. 208 (21 Atl. 847), the complainants had executed a proxy, irrevocable in its terms, empowering the defendants to vote certain shares of stock owned by complainants, so as to accomplish certain results in the management of the corporation issuing the stock— among others, the employment of one of the complainants as manager of the concern at a large salary. The vice chancellor held that, although the complaints were *in pari delicto,* they were entitled to relief against the illegal agreement, to have the proxy canceled, and to be restored to their former situation. To the same effect is *Sheppard* v. *Rockingham Power Co.,* 150 N. C. 776 (64 S. E. 894). Many other cases might be cited, but the controlling principle in them all is that, until an agreement void as against public policy is fully executed, either party may retreat, and by appropriate proceeding the courts will restore him as far as possible to his previous estate.

The case of *Phoenix Bridge Co.* v. *Keystone Bridge Co.,* 142 N. Y. 425 (37 N. E. 562), cited by defendant, is easily distinguishable from the one in hand. There several manufacturing concerns formed an association, agreeing to contribute to a common fund to be used as a guaranty and for other purposes, and providing that, in case of the expulsion of any member, the amount that it had already contributed should be forfeited to the association. The complaint alleged that, without a hearing, the association had found the plaintiff in default, and was about to forfeit the contribution it had made to the guaranty fund, and expel it from the confederation. The prayer was to enjoin the accomplishment of this result. The court held that the agreement, being a combination to enhance prices, was illegal, but refused to grant the plaintiff relief in that suit, because it proceeded in affirmance and support of the void arrangement. In other words, the plaintiff sought to enforce its supposed

rights under the agreement. The conclusion was that the judgment of the court below, dismissing the suit, "should be affirmed, without prejudice to the commencement of an action by plaintiff, if it be so advised, to recover back moneys it had paid to the association, on the ground that the agreement forming it was illegal."

The petition for a rehearing is denied.

REVERSED: REHEARING DENIED.

---

On Motion to Affirm Judgment, decided October 4, 1910.
On the Merits, argued July 20, decided August 1; rehearing denied September 12, 1911.