Argued and submitted June 27, 1983, reversed and remanded with instructions
February 22, 1984

# MESABA SERVICE & SUPPLY CO.,
*Appellant,*

*v.*

# MARTIN et al,
*Respondents.*

## (A8005-02754; CA A26428)

676 P2d 930

Michael B. Wallstein, Portland, argued the cause for appellant. With him on the briefs were William E. Hurley, and Bernard, Hurley, Crawford & Kneeland, Portland.

James E. Griffin, Lake Oswego, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff appeals from a judgment awarding it the sum of $1,000 plus prejudgment interest against defendant Ray L. Martin (defendant).[1] We reverse and remand with instructions to enter judgment for plaintiff against defendant in the amount of $7,500.

In October, 1978, plaintiff, who is in the business of buying closed-down industrial facilities and reselling equipment, purchased all of the equipment of a mine in Nevada. Defendant is in the business of buying and selling used transformers. In July, 1979, he purchased and took delivery of a 5000 kilovolt transformer from plaintiff, for which he agreed to pay $27,000. He paid $19,500 toward the purchase and admits that he owes plaintiff the balance of $7,500.

In August, 1979, the parties entered into another agreement by which defendant purchased seven transformers for $15,000. On August 31, defendant sent plaintiff a purchase order describing the seven units and stating at the bottom, "All above listed transformers at price of $15,000 where is, as is, at present location in Yerington, NV with Martin Electric Company to load on their leased trucks at site." The purchase order was signed "Ray L. Martin," and a check for $15,000 was enclosed.

Of the seven transformers in the transaction, one was a 7,500 kilovolt unit, one was a 1,500 kilovolt unit, and five were 1,000 kilovolt units. All but the 7,500 kilovolt transformer contained PCB (polychlorinated biphenyl) oil.

On September 4, 1979, plaintiff sent a letter to Martin Electric that stated, in part:

"As a condition of our release of these transformers to you, we request your acknowledgement and acceptance of the following:

---

[1] At one point defendant Ray L. Martin incorporated his business as Martin Electric Company. In 1975 the corporation was involuntarily dissolved, unbeknownst to defendant who continued using the corporate name in his business transactions. All of the transactions giving rise to this action occurred after 1975 and before the corporation was reinstated on June 20, 1980. The trial court held that, because the doctrine of *de facto* corporations has been effectively extinguished in Oregon, ORS 57.793; *Timberline Equipment Co. v. Davenport,* 267 Or 64, 514 P2d 1109 (1973), the judgment rendered against Ray L. Martin in this case is his personal liability and not that of Martin Electric Company. Plaintiff does not appeal that issue.

"1. These transformers are sold as is, where is, with purchaser to provide for loading and removal of the transformers from the property by October 1, 1979.

"2. No warranties are expressed or implied.

"3. The transformers are not to be drained of any liquid on Anaconda's property.

"4. Purchaser will assume full responsibility, without exception, for the maintenance and disposition of the liquids in the transformers and hold Seller harmless in this regard.

"Please signify your acceptance in the space provided below."

The date in paragraph 1 was changed to November 1, 1979, but the condition of release was otherwise acknowledged and accepted by Ray L. Martin and returned to plaintiff.

Sometime early in September, 1979, Roger Martin, Ray L. Martin's son and vice-president/treasurer of Martin Electric Company, became aware of the PCB in the six transformers. In October, 1979, Martin Electric picked up the 7,500 kilovolt non-PCB unit but left the six smaller PCB units at the Nevada site. In December, 1979, Roger Martin wrote plaintiff stating that Martin Electric would not pay the $7,500 outstanding balance on the July, 1979, contract because there was PCB in six of the seven units from the August, 1979 sale, making them illegal under 15 USC § 2605(e)(3)(A).[2]

---

[2] The parties stipulate that the sale of the six transformers containing PCB was illegal under 15 USC § 2605 (e)(3)(A), which provides:

"(A) Except as provided in subparagraphs (B) and (C) —

"(i) no person may manufacture any polychlorinated biphenyl after two years after January 1, 1977, and

"(ii) no person may process or distribute in commerce any polychlorinated biphenyl after two and one-half years after such date.

"(B) Any person may petition the Administrator for an exemption from the requirements of subparagraph (A), and the Administrator may grant by rule such an exemption if the Administrator finds that—

"(i) an unreasonable risk of injury to health or environment would not result, and

"(ii) good faith efforts have been made to develop a chemical substance which does not present an unreasonable risk of injury to health or the environment and which may be substituted for such polychlorinated biphenyl.

"An exemption granted under this subparagraph shall be subject to such terms and conditions as the Administrator may prescribe and shall be in effect for

Thereafter, plaintiff sued defendants for the $7,500 balance due. Defendants filed a counterclaim containing a count alleging the illegality and seeking to have the illegal portion of the August contract valued and severed from the legal portion and offset against the balance due on the July contract. Because defendant agrees that he owes $7,500 on the July contract, we discuss only the merits of the counterclaim.

In its letter opinion, the trial court wrote:

"'The crux of this case in the court's view is the severability of the sale of the one non-PCB transformer from the six containing PCB's. [sic] If the sale is unitary and the seven transformers inseparable, then the authority cited by plaintiff as to the unenforceability of executed illegal contracts would be persuasive. In that case, defendants' counterclaim for offset necessarily would fail. However, if the court finds the illegal and legal portions of the contract to be severable, then it follows that the court may entertain defendants' counterclaim."

It then concluded that the sale of the one non-PCB transformer was severable from the six containing PCB and that plaintiff was entitled to recover $7,500 on its claim against defendant on the July contract. However, the court offset plaintiff's recovery by $6,500, which was the amount that it found to be the reasonable value of the six illegal transformers, leaving plaintiff with a net recovery of $1,000.[3]

On appeal plaintiff makes two arguments: (1) The contract for the sale of the seven transformers was indivisible, thereby making it improper for the trial court to sever the sale of the six illegal transformers from the sale of the legal one;

_____

such period (but not more than one year from the date it is granted) as the Administrator may prescribe.

"(C) Subparagraph (A) shall not apply to the distribution in commerce of any polychlorinated biphenyl if such polychlorinated biphenyl was sold for purposes other than resale before two and one-half years after Octrober 11, 1976."

Because of the stipulation, we assume, but do not decide, that the contract was illegal.

[3] At trial, the court heard testimony, over plaintiff's objection, from Roger Martin, as an expert witness, on the valuation of used transformers. He testified that the industry "rule of thumb" on the value of used transformers was one dollar per kilovolt. The trial court applied this "rule of thumb" and offset the amount of $6,500. Plaintiff assigns error to the court's application of the industry "rule of thumb" valuation on relevancy grounds. Our disposition of this case makes it unnecessary for us to reach that issue.

and (2) the contract, insofar as it was illegal, was fully executed and equity will afford no relief from an illegal contract which has been fully executed. We agree with both arguments.

■ In *Henderson v. Morey*, 241 Or 164, 405 P2d 359 (1965), the court, in determining whether the parties intended a severable contract, examined the consideration to see if it was viewed as a whole by the parties or was apportioned among various promises. 241 Or at 169. Although *Henderson* did not involve an illegal contract, we believe the test employed is applicable here. *See Boyd v. Boyd*, 112 Or 658, 661-62, 230 P 541 (1924). Throughout the trial, the parties agreed that the August sale had been a package sale without allotment or allocation of the total purchase price among the seven transformers. Even Roger Martin, who testified as an expert on industry "rule of thumb" on valuation of used transformers, conceded that the sales documents reflected the sale of seven units for one sum, $15,000. There was no evidence that the "rule of thumb" testified to by Martin was employed by the parties in fixing the price of the seven units. It is clear, from the parties' own admissions, that they intended to deal with seven transformers as a package for $15,000, without allocation of the price among the separate units. For this reason we conclude that, contrary to the trial court, the August contract was not severable.

Defendants urge that, when a contract is completely executed by one party and only partially executed by another, further performance being illegal, the party that has fully performed may obtain equitable relief. Defendants argue that they have fully performed by paying the entire purchase price and have received only part performance, inasmuch as they are forbidden by law to take delivery of the remaining six transformers containing PCB. For this reason they contend that plaintiff has been unjustly enriched and should be required to make restitution, regardless of the question of severability.

Plaintiff, on the other hand, argues that the contract was fully executed and that an illegal contract, once executed, cannot support an action for recovery of money paid or property conveyed. It further contends that the trial court essentially allowed defendants to rescind the illegal purchase

after they had taken possession of the legal 7500 kilovolt transformer and after they knew or had reason to suspect that the remaining transformers contained PCB.

In *Leadbetter v. Hawley,* 59 Or 422, 424, 117 P 289, 117 P 505 (1911), the court set out two conditions which must be satisfied before a party has a right to relief from an illegal contract. "First, the action must not be for the enforcement, but rather in disaffirmance of it; and, second, the contract must at the commencement of the action be yet in the executory stage." Defendants are not in court to enforce the contract. Rather, they counterclaim to recover money paid under part of an illegal contract. Therefore, defendants satisfy the first condition.

■■    Until an illegal contract is executed, the law will aid in the recovery of money paid or property delivered in part performance of the illegal contract. *See Mogul Transportation Co. v. Larison,* 181 Or 252, 263, 181 P2d 139 (1947); *Boyd v. Boyd, supra.* However, when the contract is fully executed, the courts are closed to both parties, and they are without a remedy. *Leadbetter v. Hawley, supra,* 59 Or at 425; *see Bernard v. Taylor,* 23 Or 416, 31 P 968 (1893). Therefore, what remains for us to decide is whether the August contract was executed or executory.

■    The agreement between the parties, evidenced by the purchase order and the September 4, 1979, letter, was that plaintiff was to tender delivery of seven transformers by making them available for defendant to pick up at the Anaconda mine in Nevada. In exchange, defendant was to pay the sum of $15,000, which it did. Both parties fully performed their respective obligations under the agreement, and the contract was fully executed. The fact that defendants picked up one transformer and failed to take delivery of the remaining six illegal transformers is immaterial.[4] Plaintiff tendered delivery of all seven transformers, as it had agreed to do. The

---

[4] Defendants argue that they are "forbidden by law to take delivery of the remaining six transformers." 15 USC § 2605(e)(3)(A) and (B), *supra* n 2, provides that under certain conditions a person may petition for an exemption from the prohibition against distributing PCB in commerce after July 1, 1979. *See also* 40 CFR § 761.30(a). Therefore, although the parties' briefs do not discuss the fate of the transformers containing PCB, we cannot say that defendants are absolutely "forbidden by law" from taking delivery of the six transformers.

agreement was not conditioned on the units containing no PCB. The parties got what they bargained for.

We conclude that the August contract was not severable and that it was fully executed. Defendants were entitled to no relief under that agreement. The trial court erred in allowing a setoff of $6,500 against the $7,500 defendants concede that they owe on the July contract.

Reversed and remanded with instructions to enter judgment for plaintiff and against Ray L. Martin in the sum of $7,500.