# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-IA-00928-SCT

*GROUND CONTROL, LLC*

*v.*

*CAPSCO INDUSTRIES, INC., W.G. YATES &
SONS CONSTRUCTION COMPANY AND
HARRAH'S ENTERTAINMENT, INC.*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/04/2011 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BLEWETT W. THOMAS |
| ATTORNEYS FOR APPELLEES: | R. MARK ALEXANDER, JR. |
| | MATTHEW W. McDADE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 06/06/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Ground Control, LLC, seeks review of summary judgment granted in favor of Capsco

Industries and other defendants.  The circuit court held in part that  Ground Control's failure

to obtain a certificate of responsibility, as required by Mississippi Code Section 31-3-15,

rendered its construction contract with Capsco null and void.  While we affirm the court's

finding that the lack of certificates of responsibility rendered the parties' contract null and

void, we reverse the grant of summary judgment in part and remand this case for further

proceedings on whether Ground Control is entitled to recover based on claims of unjust enrichment and *quantum meruit*. We also reverse the grant of summary judgment in favor of Harrah's and Yates because of inadequate notice of the conversion from a motion to dismiss to a motion for summary judgment.

## FACTS AND PROCEEDINGS BEFORE THE TRIAL COURT

¶2.     The plaintiff and counterdefendant below, Ground Control, LLC, an Alabama corporation, entered into a contract with Capsco Industries, Inc., also an Alabama corporation, to perform construction on the "Margaritaville Spa and Hotel" in Biloxi, on behalf of Harrah's Entertainment, Inc. W.G. Yates and Sons Construction Company served as the general contractor. Capsco was employed as a subcontractor, and Capsco subcontracted in-ground construction work to Ground Control.

¶3.     Capsco entered into its contract with Ground Control on December 19, 2007; neither Yates nor Harrah's was a party to the contract. Ground Control was to perform work related to in-ground installation of water, sewage, and storm-drain lines. It is undisputed that neither party obtained a certificate of responsibility as required by Mississippi Code Section 31-3-21. Ground Control worked on the project until October 28, 2008, when Yates terminated it from the project for alleged safety violations and failed drug tests of its employees.

¶4.     On August 25, 2009, Ground Control filed its complaint against the defendants in Harrison County Circuit Court. On December 4, 2009, Capsco counterclaimed and filed a third-party claim against Ground Control's president, Frank Beaton, alleging that Ground Control breached the contract and that Beaton had committed acts of fraud. On December 8, 2009, Harrah's and Yates jointly moved to dismiss for lack of privity. On December 29,

2

2009, Ground Control filed a supplemental complaint alleging various extracontractual claims. On January 2, 2012, Capsco filed a motion for summary judgment, and a hearing subsequently was held on Harrah's and Yates' joint motion to dismiss as well as Capsco's motion for summary judgment. On April 4, 2011, the trial court granted summary judgment to Capsco and to Harrah's and Yates, even though the latter two jointly had moved to dismiss and not for summary judgment. The record shows that Ground Control never received notice that Yates' and Harrah's motion to dismiss would be converted to a motion for summary judgment until the trial court issued its order granting summary judgment. Ground Control timely filed this appeal.

## DISCUSSION

¶5.     This Court applies a *de novo* standard of review to a circuit court's grant or denial of summary judgment. ***Kilhullen v. Kan. City S. Ry.***, 8 So. 3d 168, 174 (Miss. 2009). Upon review, this Court must view the evidence "in the light most favorable to the party against whom the motion has been made." ***Id.*** (quoting ***Daniels v. GNB, Inc.***, 629 So. 2d 595, 599 (Miss. 1993)).

¶6.     On appeal, Ground Control asks the court to consider multiple issues pertaining to the three defendants. Because some of the issues are very closely related to one another, we have consolidated the arguments for the sake of clarity into the following issues: (1) whether Ground Control's failure to acquire the proper certification pursuant to statute barred any claim for recovery against Capsco and (2) whether the trial court properly converted Yates' and Harrah's motion to dismiss to one for summary judgment.

## I.     WHETHER GROUND CONTROL'S FAILURE TO ACQUIRE THE PROPER

3

**CERTIFICATION UNDER SECTION 31-3-15 BARRED ANY CLAIM FOR RECOVERY AGAINST CAPSCO.**

¶7.     The contract between Capsco and Ground Control falls within Mississippi Code Section 31-3-15, which requires contractors to have certificates of responsibility.  It states:

> No contract for public or private projects shall be issued or awarded to any contractor who did not have a current certificate of responsibility issued by said board at the time of the submission of the bid, or a similar certificate issued by a similar board of another state which recognizes certificates issued by said board. *Any contract issued or awarded in violation of this section shall be null and void.*

Miss. Code Ann. § 31-3-15 (Rev. 2010) (emphasis added).

¶8.     The stated purpose of requiring certificates of responsibility "is to protect the health, safety and general welfare *of all persons dealing with those who are engaged in the vocation of contracting* and to afford such persons an effective and practical protection against incompetent, inexperienced, unlawful and *fraudulent* acts of contractors." Miss. Code Ann. § 31-3-2 (Rev. 2010) (emphasis added).  Clearly, the statute was intended to protect both parties to the contract.  Furthermore, the penalties that serve to deter parties from entering illegal contracts—such as voiding the contract and imposing fines—apply to both parties.[1]

¶9.     Both Ground Control and Capsco were required by statute to obtain certificates of

---

[1]The statutory penalties for entering a contract where one or both of the parties have no certificate of responsibility are (1) to void the contract, (2) find the violators guilty of a misdemeanor, (3) fine up to $1,000, or imprison for no more than six months or impose both such fine and imprisonment.  In addition, the State Board of Contractors may issue an order of abatement directing the contractor to cease all actions until Mississippi state law is complied with, require the violator to pay to the board a civil penalty of not more than three percent of the total contract being performed by the contractor, and require the violator to perform community service for a specified number of hours as determined by the board. Miss. Code Ann. §§ 31-3-15; 31-3-21(1) and (2); and 31-3-21(4) (Rev. 2010).

4

responsibility. Both failed to do so.

¶10. This Court has never determined whether a party to an illegal contract is barred from recovery under theories of unjust enrichment or *quantum meruit*. We are not dealing with an unlawful activity contemplated by the rule that "[n]o Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act." **Price v. Perdue Pharma Co.**, 920 So. 2d 479, 484 (Miss. 2006) (plaintiff was suing for his drug addiction) (citing **Morrissey v. Bologna**, 240 Miss. 284, 300-01, 123 So. 2d 537, 545 (1960) (plaintiff was suing to recover an unlawful gaming debt).

¶11. It can be argued that Ground Control should be denied equitable relief because it does not have clean hands. *See* **Bailey v. Bailey**, 724 So. 2d 335, 337 (Miss. 1998) (finding that "[t]he clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue"). However, Capsco should not be able to use this defense in light of its far more egregious conduct. Capsco recruited Ground Control to do the work although it knew that Ground Control did not hold a certificate of responsibility as required by statute. Both were qualified to enter into the contract, and yet Capsco argues that the penalty should be applied only to Ground Control.

¶12. In a case remarkably similar to this one, the Supreme Court of Nevada held that, where a subcontractor was not licensed in Nevada (though required by statute), the parties' contract was void, and therefore contractual remedies were precluded; however, the subcontractor's claims for fraud and unjust enrichment were not barred. **Magill v. Lewis**, 74 Nev. 381, 333 P. 2d 717 (1958). That court discussed the general rule that courts will not lend aid to parties of an illegal contract but found that this rule should not be applied "where,

5

by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff." *Id.* Here, the subject matter of the contract—construction work performed by Ground Control—was perfectly legal. Most states provide for exceptions for legitimate work done under illegal contracts. Some states—Arizona, Arkansas, California, Idaho, Iowa, Louisiana, Nevada, Oregon, and Tennessee—allow parties to a void contract to recover through claims of *quantum meruit* or unjust enrichment.[2] Other states—Alabama, Delaware, the District of Columbia, Indiana,

---

[2] *See, e.g.*, ***Barry v. Pac. W. Constr., Inc.***, 140 Idaho 827, 103 P.3d 440 (2004) (illegal contract was unenforceable, however, subcontractor was entitled to recover for work performed under a theory of unjust enrichment; subcontractor's recovery was limited to restitution); ***W. Corr. Group, Inc. v. Tierney***, 208 Ariz. 583, 590, 96 P.3d 1070, 1077 (Ct. App. 2004) (finding that a contract is void due to statutory violation does not impose a blanket prohibition on the recovery of *quantum meruit* damages); ***City of Damascus v. Bivens***, 291 Ark. 600, 603, 726 S.W.2d 677, 679 (1987) (where a contract is illegal, the claimant may recover where the recovery is for unjust enrichment); ***Mesaba Serv. & Supply Co. v. Martin***, 67 Or. App. 89, 95, 676 P.2d 930, 933 (1984) (holding that, until an illegal contract is executed, the law will aid in the recovery of money paid or property delivered in part performance of the illegal contract); ***Gene Taylor & Sons Plumbing Co. v. Corondolet Realty Trust***, 611 S.W.2d 572, 577 (Tenn. 1981) (When a contract was determined to be illegal and unenforceable, appellant was permitted to recover actual expenses in the form of labor and materials expended on the project as shown by clear and convincing proof but was not allowed to recover any amounts which constituted profit under the contract); ***Coleman v. Bossier City***, 305 So. 2d 444, 445 (La. 1974) (supplier or contractor was allowed recovery against the public body, not on the contract itself (which was held to be null and void), but rather on an unjust-enrichment theory); ***M. Arthur Gensler, Jr., Assoc., Inc. v. Larry Barrett, Inc.***, 7 Cal. 3d 695, 702, 103 Cal. Rptr. 247, 499 P.2d 503 (1972) (illegal contract enforced if defendant would be unjustly enriched or plaintiff would be subject to harsh penalty); ***Magill v. Lewis***, 74 Nev. 381, 387, 333 P.2d 717, 720 (1958) (finding that preclusion of a remedy through a claim for unjust enrichment would impose a penalty "beyond and in addition to that provided by the statute"); ***Horrabin Paving Co. v. City of Creston***, 221 Iowa 1237, 262 N.W. 480, 483 (1935) (where a benefit has been received by

6

Kentucky, Missouri, New Jersey, New York, North Dakota, Utah, Vermont, Washington—permit recovery by the party that the statute was designed to protect or by the party that was less culpable in the illegal agreement.[3] This Court has explained that "courts

a municipal corporation under an express but *ultra vires* contract, there may be recovery on the grounds of quasi contract or unjust enrichment).

[3] *See, e.g.,* ***Bondi v. Citigroup, Inc.***, 423 N.J. Super. 377, 405, 32 A.3d 1158, 1174 (N.J. App. Div. 2011) (holding that, under New Jersey law, the party invoking the defense of *in pari delicto* must establish that the party against whom the defense is asserted must have "substantially equal responsibility for the underlying illegality" to permit dismissal of claims asserted by the aggrieved party); ***In re Am. Int'l Group, Inc., Consol. Derivative Litig.***, 976 A.2d 872, 883 (Del. Ch. 2009) *aff'd sub nom.* ***Teachers' Ret. Sys. of Louisiana v. Gen. Re Corp.***, 11 A.3d 228 (Del. 2010) (if a plaintiff engaged in illegal acts because of duress or where an illegal contract is "intrinsically unequal," the parties are not considered to be in truly equal fault and *in pari delicto* will not bar the plaintiff's action); ***Jipac, N.V. v. Silas***, 174 Vt. 57, 66, 800 A.2d 1092, 1100 (Vt. 2002) (courts will afford relief from illegal contracts "where equity requires it, to the more innocent party even after the agreement has been executed"); ***A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.***, 1999 Utah Ct. App. 87, 977 P.2d 518, 523 (Utah 1993) (where the Utah Court of Appeals carved out exceptions to the general rule barring recovery to parties to an illegal agreement); ***Monsignor Bernard P. Sheridan Counsel No. 6138 Knights of Columbus v. Bargersville State Bank***, 620 N.E.2d 732, 735 (Ind. Ct. App. 1993) (unless the parties are *in pari delicto* (in equal fault) the less guilty party may recover); ***Golberg v. Sanglier***, 96 Wash. 2d 874, 883, 639 P.2d 1347, 1353, *amended*, 96 Wash. 2d 874, 647 P.2d 489 (Wash. 1982) (where the conduct of the party who seeks to enlist support of the doctrine of *in pari delicto* outrages public sensibilities more than the conduct of the party against whom the doctrine is sought to be applied, courts will not support application of the rule); ***Twiehaus v. Rosner***, 362 Mo. 949, 954, 245 S.W.2d 107, 112 (Mo. 1952) (the Court carved out two exceptions to the rule that the law leaves parties to an illegal contract where it finds them: (1) "If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed"; and (2) "The nature or terms of a statute or rule of law will also sometimes indicate that it is intended for the protection of one class of individuals against another, and where this is the case the party belonging to the class whose protection was intended may recover what he has paid"; ***Rubin v. Douglas***, 59 A.2d 690, 691 (D.C. Mun. App. 1948) (Courts have permitted persons to recover on an illegal contract when "the law in question was passed for his protection and it appears that the purposes of the law will be better effectuated by granting relief than by denying it"); ***Furman v. Furman***, 178 Misc. 582, 586, 34 N.Y.S.2d 699, 704 (Sup. Ct. 1941) *aff'd*, 262 A.D. 512, 30 N.Y.S.2d 516 (N.Y.

of this state have always, in proper cases, been prepared to 'hold a person to a representation made or a position assumed where otherwise inequitable consequences would result to another who, having the right to do so under all of the circumstances of the case, has in good faith relied thereon and been misled to his injury.'" **PMZ Oil Co. v. Lucroy**, 449 So. 2d 201, 206 (Miss. 1984) (quoting **Stokes v. Am. Cent. Ins. Co.**, 211 Miss. 584, 589, 52 So. 2d 358, 360 (1951)); **PMZ Oil Co. v. Lucroy**, 449 So. 2d 201, 206 (Miss. 1984) (quoting **Stokes**, 52 So. 2d at 360).

¶13.    The trial court granted Capsco's motion for summary judgment on the basis that Mississippi Code Section 31-3-15 rendered the parties' contract null and void; and since an express contract existed, the court held that Ground Control was precluded from recovering under the claims of unjust enrichment and quasi-contract. The trial court explained that "such a recovery would frustrate the public policy purposes inherent in the statutory licensure

App. Div. 1941) *aff'd*, 287 N.Y. 772, 40 N.E.2d 643 (N.Y. 1942) (Where the parties are not equal in guilt (*in pari delicto*) but where one of them, although participating in the wrong, is less guilty than the other, the party more at fault cannot employ the doctrine of *pari delicto* to shield his deliberate invasion of the rights of the former. In such a situation, the parties are said to be *in particeps criminis* and not *in pari delicto*, and a law court will grant relief to the less guilty of the parties who has suffered a deliberate wrong.); **May v. Draper**, 220 Ala. 214, 216, 124 So. 89, 91 (Ala. 1929) (holding that the principle that the law will leave parties to an illegal transaction where it finds them presupposes that the parties are equally at fault. If the payment has been extorted or induced by duress, oppression, or undue influence, it can be recovered.); **Janzen v. Crum**, 50 N.D. 544, 197 N.W. 138, 139 (N.D. 1924) (The general rule that the law leaves parties to illegal agreements where it finds them is not applied where the party asking to be relieved from the effect of an illegal agreement was induced to enter into the same by means of force, fraud, duress, undue influence, threats, or where money or property is obtained by a public officer by color of his office.); **Chapman v. Haley**, 117 Ky. 1004, 80 S.W. 190, 191 (Ky. 1904) ("If both parties are *equally guilty* of a breach of the law, a court of justice cannot interpose to aid in behalf of either, for it is a settled rule that in '*pari delicto potior est conditio defendentis*.'") (emphasis added).

8

requirements." We disagree. The statutory penalties in Sections 31-3-15 and 31-3-21 still penalize unlicensed contractors. Unjust enrichment applies to situations "where there is *no legal contract* and 'the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" ***Powell v. Campbell***, 912 So. 2d 978, 982 (Miss. 2005) (emphasis added) (citing ***Koval v. Koval,*** 576 So. 2d 134, 136 (Miss. 1991) (citation omitted). That is precisely the situation before us.

¶14. Capsco knowingly solicited Ground Control to enter into an unlawful contract, allowed Ground Control to perform a substantial part of the work, made an interim payment to Ground Control, and obtained payment from Yates for Ground Control's work. To allow Capsco to use the void contract to shield itself from any obligation to pay for the work performed by Ground Control is unconscionable. Enforcing the statute in such a way as to preclude any recovery is inequitable, invites fraudulent activity, and violates the Remedy Clause of our State Constitution. *See* Miss. Const. art. 3, § 24.

¶15. Although the contract is void pursuant to Section 31-3-15, Ground Control should not be precluded from having the opportunity to proceed in court under a claim for the value of what it expended in labor and supplies on the project. We do not address the issue of other penalties, if any, that may be appropriate for the trial court to address.

## II. WHETHER THE TRIAL COURT ERRONEOUSLY CONVERTED YATES' AND HARRAH'S MOTION TO DISMISS TO ONE OF SUMMARY JUDGMENT.

¶16. Ground Control complains that the trial court, *sua sponte* and without notice, converted the joint motion to dismiss filed by Yates and Harrah's into a motion for summary

9

judgment. The record before the Court supports Ground Control's contention. Yates and Harrah's filed a joint motion to dismiss pursuant to Mississippi Rule of Civil Procedure 12. The transcript of the hearing shows that the parties appeared before the trial court and argued the merits of a Rule 12 motion to dismiss. Although the trial judge and the parties discussed the possible conversion of the motion into a motion for summary judgment, the attorneys for Yates and Harrah's insisted their motion was a Rule 12 motion to dismiss. The hearing concluded without any notice that the trial court would convert the motion to a Rule 56 motion for summary judgment. However, when the trial court issued its opinion, it announced that it had converted the motion into one for summary judgment and granted summary judgment in favor of Yates and Harrah's. The opinion was the first indication to Ground Control that the motion had been converted.

¶17.    When a motion to dismiss under Rule 12(b)(6) is converted to a motion for summary judgment, the requirements of Rule 56 apply, and "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. . . ." Miss. R. Civ. P. 12(c). As explained in ***Palmer v. Biloxi Regional Medical Center***, 649 So. 2d 179 (Miss. 1994):

> Whenever a motion to dismiss under Rule 12(b)(6) is converted into a motion for summary judgment, the requirements of Rule 56 become operable. It is important that the court give the parties notice of the changed status of the motion and a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56" . . . . Accordingly, before this Court can determine on appellate review if the non-moving party has had a reasonable time in which to file documentation in opposition to a Rule 12(b)(6) motion that has been converted to a Rule 56 motion for summary judgment, we must determine if the non-moving party has been afforded ten days notice of the court's intention to conduct a summary judgment hearing on a date certain.

10

*Id.* at 182-83 (citation omitted).

¶18.    Ground Control relies on ***Sullivan v. Tullos***, 19 So. 3d 1271, 1277 (Miss. 2009), for the proposition that conversion of a motion to dismiss into one for summary judgment requires ten days' notice.  Yates and Harrah's counter that, just a month prior to ***Sullivan***, this Court handed down ***Davis v. City of Clarksdale***, 18 So. 3d 246 (Miss. 2009).  While, in ***Davis***, a motion to dismiss was converted to a motion for summary judgment, notice of the conversion does not appear to have been an issue and was not discussed therein.

¶19.    This Court's most recent treatment of the issue may be found in ***Delta MK, LLC v. Mississippi Transp. Comm'n***, 57 So. 3d 1284 (Miss. 2011).  The Court clearly tied the need to provide notice to the trial court's decision to convert the motion from one to dismiss to one for summary judgment.  There, the Court said "[i]t is important that the court give the parties notice of the *changed status* of the motion. . . ."  ***Id.*** at 1289 (¶ 13) (emphasis added).  The Court also stated that it "must determine if the non-moving party has been afforded ten days' notice *of the court's intention* to conduct a summary judgment hearing" and that "the judge *must* give all parties ten days' notice that he is converting the motion."  ***Id.***  (emphasis added). No matter how baseless the claims of the nonmoving party may be, reversal is warranted when the trial court fails to give proper ten-days' notice.  ***Id.***

¶20.    Furthermore, the ***Delta MK*** Court expressly rejected an argument made in the case *sub judice* by Yates and Harrah's—that Ground Control cannot rely on an argument of surprise, because it, too, submitted matters outside the pleadings for the trial court's consideration.  ***Delta MK,*** 57 So. 3d at 1290 (¶ 17).  ***Davis*** offers no help to Yates and Harrah's, either.  While the Court did accept the trial court's conversion of the ***Davis*** motion to dismiss to a

motion for summary judgment and considered it as a motion for summary judgment on appeal, the **Davis** opinion is silent on the issue presented here.

¶21.    The trial court did not inform Ground Control of its intent to convert the motion to dismiss into a motion for summary judgment until the order was issued. The transcript of the hearing on the motion to dismiss indicates the parties were arguing a Rule 12–not a Rule 56 –motion. The trial court raised the possibility of converting the motion, and counsel for Yates and Harrah's insisted that the motion remained a Rule 12 motion to dismiss. In short, Ground Control never had the opportunity to present summary judgment argument to the trial court. In **Palmer v. Biloxi Regional Medical Center, Inc.**, the Court wrote with approval of the Eleventh Circuit's reasoning behind the notice requirement:

> The Eleventh Circuit has consistently enforced the strict notice requirements of Rule 12(b) and 56, creating a bright-line rule: If a trial court fails to comply with the ten-day notice requirement, the case will be reversed and remanded so that the trial court may provide the non-moving party with adequate notice. Whenever a trial judge converts a 12(b)(6) motion to dismiss into one for summary judgment by considering matters outside of the pleadings the judge *must* give all parties ten days notice that he is converting the motion.

> The Eleventh Circuit's strict enforcement of the notice requirements of Rule 12(b) and Rule 56 is consistent with our constitution and our case law. Considerations underlying the ten-day notice requirement of Rule 56 make it clear why this notice requirement is enforced so strictly. A successful summary judgment motion results in a final adjudication of the merits of a case. Therefore, it is an absolute necessity that the trial court inform the parties of its intent to convert a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment, and give the parties the opportunity to submit materials in opposition to the motion. The requirements of Rule 56(c), far from being a mere extension of our liberal procedure exalting substance over form, represents a procedural safeguard to prevent the unjust deprivation of a litigant's constitutional right to a jury trial.

**Palmer v. Biloxi Reg'l Med. Ctr., Inc.**, 649 So. 2d 179, 183-84 (Miss. 1994) (citations

omitted).

¶22. In the case *sub judice*, the trial court failed to inform Ground Control the motion would be considered under Rule 56 until its order granting the motion was issued. Accordingly, we reverse the grant of summary judgment to Yates and Harrah's and remand the issue to the trial court for proceedings consistent with this opinion.

## CONCLUSION

¶23. Although we agree with the trial court's finding that the lack of certificates of responsibility rendered the parties' contract null and void, we find that Ground Control's claims for unjust enrichment and *quantum meruit* are not barred by Mississippi Code Section 31-3-21. Therefore, the grant of summary judgment in favor of Capsco is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.

¶24. The grant of summary judgment in favor of Yates and Harrah's is reversed, and the case is remanded to the trial court for failure to give proper notice of the conversion of the Rule 12 motion to dismiss to a Rule 56 motion for summary judgment.

¶25. **REVERSED AND REMANDED.**

**DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER AND KING, JJ., CONCUR. DICKINSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., LAMAR, KITCHENS, CHANDLER AND KING, JJ. RANDOLPH, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE AND COLEMAN, JJ. COLEMAN, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND PIERCE, J.**

**DICKINSON, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶26. Because I so strongly believe in the strict enforcement of the first two sections of our

13

Constitution, and that this Court should faithfully apply the terms and provisions of constitutional legislation, I write separately to voice my disagreement with Justice Coleman's view that today's majority

> "dislodge[s] settled rights and expectations" in place when the Legislature enacted Section 31-3-15 and results in the Court *de facto* substituting its own policy judgments for that of the Legislature and judicially abrogating much of the effect of Section 31-3-15.[4]

¶27. As it pertains to this case, Section 31-3-15 provides no more than that contracts "issued or awarded [without the required certificate of responsibility] shall be null and void." No one suggests that Ground Control's contract has survived. It is, indeed, null and void. But to suggest that Ground Control may not pursue an equitable remedy to recover the reasonable value – not the contract value – for the work already performed and materials already furnished, is to read something into the statute that is not there. The statute says nothing about whether remedies (other than contract remedies) may be available to the contractor. It says no more than that the contract is null and void.

¶28. Justice Coleman's concern with *quantum meruit* lawsuits for illegal acts is understandable but misplaced. Comparing drug deals to construction contracts is unhelpful. The acts to be performed by drug dealers – selling illegal drugs – are, themselves, illegal, and neither the law nor equity provides a remedy for those illegal acts. But we have no criminal statutes that prohibit the installation of water and sewer lines. As stated above, Section 31-3-15 says nothing about making Ground Control's work illegal; it simply voids its contract and deprives it of any contractual remedy.

---

[4]Coleman, J., Concurring in Part, Dissenting in Part, ¶ 34.

14

¶29.  Because Ground Control failed to obtain the required certificate, Section 31-3-15 deprives it of any claim under the provisions of the contract.  But one cannot help but sense the gross inequity of allowing Capsco – who also was aware that Ground Control had no license – to be unjustly enriched from Ground Control's work and pocket all the payments from the owner, including the portion intended for Ground Control's labor and materials.  It is true that the statute has voided the contract.  But that, in my view, is why we have equitable remedies like *quantum meruit* – to provide a remedy where equity demands it, and none exists under the law.

¶30.  The doctrine of *quantum meruit* applies where there is no legal contract, and the person sought to be charged has received money which in good conscience and justice, should be paid to another person.[5]  The only elements necessary to prevail under the *quantum meruit* doctrine are:  (1) valuable services rendered and/or materials furnished; (2) for the person sought to be charged; (3) services and materials were accepted, used and enjoyed; (4) person sought to be charged knew or reasonably should have known the plaintiff expected to be paid.  Because there is evidence sufficient to create a genuine question of material fact as to each of these elements, summary judgment was inappropriate,[6] so I fully concur with the majority.

**WALLER, C.J., LAMAR, KITCHENS, CHANDLER AND KING, JJ., JOIN THIS OPINION.**

---

[5] *In re Estate of Fitzner*, 881 So. 2d 164 (Miss. 2003); *Dew v. Langford*, 666 So. 2d 739, 745 (Miss. 1995).

[6] Miss. R. Civ. P. 56 (c) (summary judgment appropriate where "there is no genuine issue as to  any material fact . . . .").

15

**RANDOLPH, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶31.   Today's case involves two Alabama companies that chose to avoid Mississippi's certification requirements for contractors by colluding to enter into a construction contract to perform services in Mississippi. I agree with Justice Coleman that the contract violates the public policy of this State. It seems a bit absurd to allow a party that knowingly entered into a contract that is unenforceable under Mississippi law, to alternatively obtain relief under an equitable theory. Equity is available only to those who have clean hands. *See R.K. v. J.K.*, 946 So. 2d 764, 774 (Miss. 2007) ("It is one of the oldest and most well known maxims that one seeking relief in equity must come with clean hands or *face refusal by the court to aid in securing any right or granting any remedy*.") (emphasis added). Under the facts presented, *neither* party should receive aid from Mississippi courts.

¶32.   Mississippi Code Section 31-3-15 explicitly prohibits entering into a contract with a contractor who does not have a current certificate of responsibility, and declares such contracts null and void. Miss. Code Ann. § 31-3-15 (Rev. 2010). The circumvention of Section 31-3-15 to provide remedies to parties that violate the public policy and statutory law of this State oversteps our constitutional function to enforce laws and contracts as written. Today's decision frustrates the Legislature's public policy of requiring certification and nullifying enforcement of such agreements. It enables noncompliant contractors to avoid the Legislature's requirements without penalty. It utilizes Mississippi courts to thwart the legislative enactment. It will encourage other contractors to ignore the law, for there will be no penalties or repercussions. Lest we forget, equity follows the law. *See In re Estate of*

16

*Miller*, 840 So. 2d 703, 708 (Miss. 2003) ("courts have consistently held that under the equitable doctrine that 'equity follows the law,' courts of equity cannot modify or ignore an unambiguous statutory principle in an effort to shape relief" (citations omitted)). Following the law would have provided both parties with a remedy: an action for breach of contract.

¶33.    Our courts will not enforce contracts that are illegal under our statutes. "No action can be based on an illegal agreement. The foundation of this rule is in the policy of discouraging illegal agreements by refusing all judicial aid to the parties to them. And it applies to any agreement which is prohibited by statute." *Powelson v. National Airlines*, 220 Miss. 595, 607, 71 So. 2d 467, 471 (1954) (citation omitted). Should not the majority overrule *Powelson* to facilitate this newfound recovery for illegal agreements? Equity is the epitome of judicial aid. Today's result is legally and equitably absurd. Both parties have unclean hands; the actions of each are violative of the statute and against public policy. Both parties should be prevented from recovering under a noncontractual theory for any losses related to their illegal agreement, an illegally-entered contract. Making equitable remedies available for an illegally-entered contract, made with *full awareness of its illegality*, defies both logic and the Legislature's explicit determination that such contracts are not to be enforced by the courts of this state. For these reasons, I join Justice Coleman's dissent.

**PIERCE AND COLEMAN, JJ., JOIN THIS OPINION.**

**COLEMAN, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶34.    I believe that the majority's opinion today "dislodge[s] settled rights and expectations" in place when the Legislature enacted Section 31-3-15 and results in the Court *de facto*

substituting its own policy judgments for that of the Legislature and judicially abrogating much of the effect of Section 31-3-15. Therefore, I respectfully concur in part and dissent in part. The Mississippi Legislature enacted Mississippi Code Section 31-3-21. That section of our law, in combination with Section 31-3-2, explicitly makes the conduct of both Ground Control and Capsco illegal and contrary to the public policy of our state. Enactments of substantive law and public policy properly fall within the authority of our Legislature. *Dialysis Solutions, LLC v. Mississippi State Dep't of Health*, 96 So. 3d 713, 716 (¶ 7) (Miss. 2012); Miss. Const. art. 1, § 2 (no member or group of members of one branch of government may exercise powers belonging to another branch); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*,132 S. Ct. 2566 (2012) (Justices and judges "possess neither the expertise nor the prerogative to make policy judgments."). When enacting law, the legislative branch should be able to expect the Court consistently and accurately to apply its own decisions and other laws of the state. *Hubbard v. U.S.*, 514 U.S. 695, 714 (1995) ("*Stare decisis* has special force when legislators or citizens 'have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response.'").

¶35.   Without question, the record in the above-styled case establishes that both Ground Control and Capsco acted in contravention of Section 31-3-15 when they entered into a construction contract when both knew that Ground Control did not have the required certification. An affidavit from a Ground Control executive shows that Ground Control knew the requirements of the law, so I do not agree with the majority that Capsco is guilty of fraud in some way. For that to be the case, Ground Control had to *in good faith* rely on

18

Caspco's representations that no certificate was necessary. I fail to see how any reliance on the part of Ground Control could be in good faith when Ground Control's executive admitted Ground Control knew of the statutory requirement. *PMZ Oil Co. v. Lucroy*, 449 So. 2d 201, 206 (Miss. 1984) (holding that the Court has always held responsible those who make fraudulent representation to another who "has in good faith relied thereon and been misled to his injury"). In my view, this Court should tread carefully when promulgating authority that appears to allow a private party, such as Capsco, to waive the requirements of statute, especially when the supposed victim of the fraud knew those requirements.

¶36. In any event, I acknowledge that there exists no satisfying outcome here. Neither Capsco nor Ground Control comes before the Court with clean hands, and whatever holding the Court reaches will be unsavory. I agree with the majority that the contract between Capsco and Ground Control is void by operation of Section 31-3-15, but I disagree that Ground Control is entitled to any equitable relief.

¶37. If a licensure or regulatory statute is enacted as a matter of public policy and not simply as a prophylactic measure to protect the private right of an individual citizen, private parties have never before been able to side-step legislatively created protections through waiver or estoppel. When the Legislature passed Section 31-3-2, it pulled construction contracts from the realm of mere agreements between private parties into the realm of public policy and concern. I believe that the majority places the private rights of Capsco above the interests of the public the Legislature sought to protect, and that in doing so, the majority changes long-standing Mississippi law.

¶38. We have held explicitly that the above-stated principle ". . . applies to contract cases

19

as well, preventing relief on a claim based on a contract that is illegal or against our state's public policy." *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 484-85 (¶ 13) (Miss. 2006) (citing *Lowenburg v. Klein*, 87 So. 653, 655 ( Miss. 1921)); *see also Whittington v. H.T. Cottam Co.*, 158 Miss. 847, 130 So. 745, 749 (1930) ("Contracts in violation of public policy are not voidable, but absolutely void, and the courts will refuse to aid either of the parties."). The *Price* Court articulately explained the importance of public policy considerations in the enforcement of contracts.

> This Court has long recognized the maxim, from the words of Lord Mansfield, in *Holman v. Johnson,* 1 Cowper. 341, decided in 1775, *"ex dolo malo non oritur actio,"* which means that "[n]o Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act." *Morrisey v. Bologna*, 240 Miss. 284, 300-01, 123 So. 2d 537, 545 (1960). Nearly a century ago, this Court laid out the rule in Mississippi.
>
> If a plaintiff cannot open his case without showing that he has [not] broken the law, a court will not aid him. It has been said that the objection may often sound very ill in the mouth of the defendant, but it is not for his sake the objection is allowed; it is founded on general principles of policy which he shall have the advantage of, contrary to the real justice between the parties. The principle of public policy is that no court will lend its aid to a party who grounds his action upon an immoral or illegal act.
>
> The principle has been applied in numerous cases wherein its application seems to have been of doubtful propriety, but the principle as stated is undoubtedly sound in logic, and necessarily affords the true test for the guidance of the courts.

*Price,* 920 So. 2d at 484 (¶ 13).  I am unconvinced by the majority's attempt to distinguish *Price* by stating simply that it involved a plaintiff "suing for his drug addiction."  (Maj. Op. ¶ 10.)  In *Price*, the plaintiff sued multiple defendants on the ground that he had become addicted to OxyContin.  *Price*, 920 So. 2d at 481 (¶ 1).  The *Price* Court applied the doctrine of *ex dolo malo non oritur actio* because the plaintiff's use of OxyContin violated

20

Mississippi Code Section 41-29-144, which makes acquiring the drug "unlawful." *Id.* at 484 (¶ 12). While the result of one violating Section 41-29-144 may differ in consequences from a violation of Section 31-3-15, what matters is that both activities have been declared illegal and have been penalized by the Legislature. Far from being distinguishable, *Morrissey v. Bologna*, 240 Miss. 284, 123 So. 2d 537 (1960), directly apples to the facts now before the Court. The *Morrissey* Court held that one could not recover money owed under an illegal agreement or contract concerning the sale of whiskey. *Id.* at 543. The statute upon which the *Morrissey* Court relied voided all notes and securities given to indicate indebtedness incurred in the purchase of intoxicating liquors. The *Morrissey* Court wrote, "Obviously a court of equity, bound to follow the law, should not permit a person to circumvent completely the provisions of the statute and to make a shambles of the law." *Id.* at 544. There is no question that the statute at issue in this case was enacted as a matter of public policy. Mississippi Code Section 31-3-2 states as follows:

> The purpose of this chapter, is to protect the health, safety and general welfare of all persons dealing with those who are engaged in the vocation of contracting and to afford such persons an effective and practical protection against incompetent, inexperienced, unlawful and fraudulent acts of contractors.

¶39. The majority writes that the purpose of the Section 31-3-15 is to protect both parties to the contract. (Maj. Op. ¶ 8.) However, in Section 31-3-2, the statute itself reveals that the purpose of the chapter is not to protect the parties to the contract but to protect "the health, safety and general welfare of *all persons* dealing with those who are engaged in the vocation of contracting . . . against incompetent, inexperienced, unlawful and fraudulent acts of contractors." In other words, the Legislature's point in requiring certificates of responsibility

21

is not primarily to protect contractors from one another, but to protect *members of the public* whose health, safety, and general welfare are threatened by incompetent, inexperienced, unlawful, and fraudulent acts of contractors.

¶40.    Although not all jurisdictions have addressed the question, I find more persuasive the rule that prohibits *any* compensation under a claim of equity if the statute in question prohibits the unlicensed contractor from maintaining suit for a breach of the illegal contract as a matter of public policy.  *See **Hydrotech Systems, Ltd. v. Oasis Waterpark***, 803 P. 2d 370, 379 (Cal. 1991) (holding that the defendant was not estopped from raising the defense of illegality in response to a claim of fraud); ***Romero v. Parker***, 207 P. 3d 350 (N.M. App. 2009) (holding the defendant is not estopped from raising illegality as a defense to unjust enrichment); ***Cooper v. Johnson***, 219 So. 2d 392 (Ala. 1969) (citing ***Ellis v. Batson***, 58 So. 193 (Ala. 1912) (holding that defendant is not estopped from raising defense of illegality against a claim of breach of implied contract or conversion)).

¶41.    The rule comports with our state's law as set forth in ***Price***.  As the ***Price*** Court acknowledged, enforcement of this rule may indeed sound ill, but the Court should not now change Mississippi's longstanding law and allow a party which has itself engaged in illegal conduct to find relief.  *See **Price***, 920 So. 2d at 484 (¶ 13).  Neither should we allow a private entity such as Capsco unilaterally to waive the requirements of Mississippi law.  One California court explained such a result as follows:

> Where the object of the contract is illegal, courts generally will not enforce it or lend assistance to a party who seeks to benefit from an illegal act. *The reason for this refusal is not that the courts are unaware of possible injustice between the parties*, and that the defendant may be left in possession of some benefit he should in good conscience turn over to the plaintiff, *but that this*

22

*consideration is outweighed by the importance of deterring illegal conduct.* Knowing that they will receive no help from the courts and must trust completely to each other's good faith, the parties are less likely to enter an illegal arrangement in the first place.

***Yuba Cypress Housing Partners, Ltd. v. Area Developers***, 98 Cal. App. 4th 1077, 1082, 120 Cal. Rptr. 2d 273, 277 (Cal. App. 2002) (citations omitted) (emphasis added). The principle announced by the ***Yuba*** Court explains why I would reject the Nevada case of ***Magill v. Lewis***, 74 Nev. 381, 333 P.2d 717 (1958), cited favorably by the majority. (Maj. Op. ¶ 12.) I disagree that the "public cannot be protected" should we deny relief to Ground Control. The public is protected because, as the ***Yuba*** Court wrote, illegal conduct such as that of which both Capsco and Ground Control are guilty here will be discouraged in the future if contractors know they can find no help from the courts when they proceed in violation of Section 31-3-15 and must instead rely on each other's good faith.

¶42.   In the case *sub judice*, the majority appears to view Capsco, which the record shows enticed Ground Control into the contract with representations that the certification would not be necessary, as the villain and Ground Control as innocent victim. The majority raises the concern that an absolute bar to recovery would give contractors such as Capsco incentive to search for out-of-state subcontractors, enter into illegal contracts with them, and then refuse to pay them upon completion of the work. In support, the majority cites ***PMZ Oil Co. v. Lucroy***, 449 So. 2d 201, 206 (Miss. 1984) (holding that the Court has always held responsible those who make fraudulent representation to another who "has in good faith relied thereon and been misled to his injury.").

¶43.   As is clear from the above-quoted passage, reliance in *good faith* is an essential

23

element for a valid claim of fraud. Ground Control is in the business of construction and knew that other states, including its own, required certain certifications it did not have. Ground Control admits that it informed Capsco that it "did not maintain any independent certification or license." Additionally, the contract signed by Ground Control *required* Ground Control to obtain all appropriate licenses; yet, Ground Control did not even *apply* for the certificate.[7] Both parties knowingly attempted to circumvent the law, and it cannot be said that Ground Control relied *in good faith* upon any representations by Capsco.

¶44. Aside from the issue of fraud, Ground Control is also barred from asserting a claim of unjust enrichment.

> [T]he doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

*Dew v. Langford*, 666 So. 2d 739, 745 (Miss. 1995). The Court must "view the obvious and see whether a resulting or constructive trust may be implied under the facts of [the] case." *Id.* I cannot agree with the majority because, pursuant to the rule announced in *Price*, *Lowenburg*, and *Whittington*, no constructive or resulting trust should be inferred by a court in Mississippi when the party requesting relief bases his request on his own illegal act. Put differently, unjust enrichment is an equitable claim, *Union National Life Insurance Co. v.*

---

[7]Whatever negotiations took place, it is well-settled law that a complete and unambiguous contract will govern the rights of contracting parties. *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 403 (Miss. 1997) (Mississippi's "familiar rule of contract interpretation is that a clear and unambiguous contract will be enforced as written.").

***Crosby***, 870 So. 2d 1175, 1180 (¶ 14) (Miss. 2004), and a party seeking equitable relief must come to the court with clean hands. "The clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue." ***Bailey v. Bailey***, 724 So. 2d 335, 337 (¶ 6) (Miss. 1998); ***Calcote v. Calcote***, 583 So. 2d 197, 199-200 (Miss. 1991).

¶45.    Given Ground Control's misconduct in entering into an illegal contract with Capsco, no equitable relief is available to it. In ***Thigpen v. Kennedy***, 238 So. 2d 744, 746-47 (Miss. 1970), a husband transferred property to his girlfriend to hide it from his wife during divorce proceedings. ***Id.*** at 746. When the husband later sued the girlfriend in an attempt to recover the property, the Court held that the transfer violated the statute of frauds and was "contrary of public policy." ***Id.*** Accordingly, no resulting trust could be said to exist in favor of the husband, and he could claim no relief on grounds of unjust enrichment. ***Id.*** The ***Thigpen*** Court explained:

> The fact that the parties in this case are *in pari delicto* does not aid appellee. The maxim is not invoked for the benefit of the parties to a fraudulent transaction, but rests upon the proposition that society must be protected. Furthermore, in order for the court to invoke the maxim, it is not necessary for the conduct to be of such a nature as to be punishable as a crime or even to justify legal proceedings of any character. Any wilful act concerning the cause of action which can be said to transgress equitable standards of conduct is sufficient to invoke the maxim.

***Id.*** at 746-747. The majority would allow equitable relief to Ground Control because the majority believes Capsco's behavior to be more egregious than that of Ground Control. However, as noted above, the record clearly shows that Ground Control knew it was entering into a contract without the necessary certificates and even agreed, but never attempted, to get

the certificates. It is not an innocent party. Moreover, I do not believe it to be consistent with our law to allow a party guilty of illegal conduct, as was Ground Control, to come into our courts and circumvent the law because some may find the defendant to be guilty of more reprehensible conduct. Such a possibility has been recognized by this Court for years, and until today, the Court nevertheless has disallowed a party to base a claim for relief on its own illegal and inequitable conduct. Accordingly, I disagree with the majority and believe that no equitable relief is available to Ground Control.

¶46. I do not agree, as my colleague Presiding Justice Dickinson writes, that one must "sense the gross inequity of allowing Capsco – who was aware that Ground Control had no license – to be unjustly enriched from Ground Control's work and pocket all the payments from the owner, including the portion intended for Ground Control's labor and materials." To the contrary, I would hold that Ground Control is precluded from asserting unjust enrichment because it knowingly broke the law and engaged in an illegal contract. As Justice Dickinson writes, there exists no law against the installation of water and sewage lines. There is, however, a law against entering into a contract to do so without the proper certification. The decision to enter into the prohibited contract led Ground Control to do the work at issue and provides the ultimate basis for its cause of action. Justice Dickinson cites no caselaw, and I have found none, that limits the application of the doctrine at issue only to illegal acts that carry with them the potential of incarceration. This case is not one of Ground Control being led down the garden path by Capsco, but one of Ground Control cutting corners and violating Mississippi law to obtain a contract. The record shows that Ground Control made no attempt to obtain the appropriate license, despite having full

26

knowledge of its legal obligation to do so. Furthermore, Ground Control ignored the contractual provision – signed by its agent – mandating that it obtain all required licenses.

¶47. Moreover, I agree with Justice Dickinson that Section 31-3-15 in and of itself does no more than void the contract. However, Section 31-3-15 is not the only law of our state that applies to Ground Control's attempt to come into court and found a cause of action upon its own illegal act. As I write above, the doctrine of *ex dolo malo non oritur actio* has forbidden such attempts in Mississippi for a century. With respect, neither the majority nor Justice Dickinson has cited sufficient authority to lead me to believe that the Court should now depart from and create an exception to the doctrine. If Justice Dickinson is correct, and a party may base his cause of action on his own illegal act as Ground Control did here, and that party need only show the elements of *quantum meruit* but not that he enters into court with clean hands, then this Court today effectively overrules **Price** and its predecessors. For example, the illegal contract for the sale of liquor of **Morrissey** becomes enforceable via *quantum meruit*. To reduce his position to a modernized absurdity, if a drug dealer were to convince a junior high student that Mississippi has legalized marijuana sales and then refuse to pay his gullible subcontractor-in-crime, the aspiring miscreant could seek relief in Mississippi's courts as long as the elements of *quantum meruit* outlined by Justice Dickinson are met. Before the Court's decision today, such behavior excluded a party from relief *precisely* because of the higher need to protect society – the goal the statute informs us the Legislature had in enacting its certification requirement – even when the result may seem unjust. In other words, with the passage of Section 13-3-15, the Legislature turned the focus of the law from protecting the individual parties to the contract to protecting the public.

27

What the majority does today, in my view, protects the individual party at the expense of the public the statute was enacted to protect.

¶48. While I agree with the majority that the grant of summary judgment in favor of Yates and Harrah's should be reversed, I would affirm the trial court's grant of summary judgment in favor of Capsco. I concur with the majority's holding that the contract between Capsco and Ground Control is rendered void by Section 31-3-15. However, on the issue of allowing Ground Control to recover on other grounds, I believe the majority reaches a result and creates law that could not have been anticipated by the Legislature when it passed Section 31-3-15, and thereby effectively overrules the statute at least in part by allowing a party such as Ground Control to ignore Mississippi law without any real consequences. Accordingly, I concur in part and dissent in part.

**RANDOLPH, P.J., AND PIERCE, J., JOIN THIS OPINION.**